

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES:FTB/AFP
F. #2022R00795

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 26, 2022

**TO BE FILED UNDER SEAL**

By ECF and Email

The Honorable Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

        Re:    United States v. Kara Sternquist
                  Magistrate Judge Docket No. 22-01005

Dear Judge Bulsara:

        The government writes in response to the Court's order dated September 23, 2022, directing the government to show cause why contempt proceedings should not be commenced against the United States Department of Justice.  The government respectfully submits that, for the reasons given below – including that on Saturday, September 24, 2022, to comply with the Court's order, the defendant was transferred to a new place of confinement located in the women's section of the MDC – initiation of contempt proceedings is not warranted.

        By way of background, in an oral order given on September 21, 2022 and (sealed) written order issued on the morning of September 22, 2022, the Court directed that the Metropolitan Detention Center ("MDC") "move [the defendant] to the women's section of MDC" by 4:00 p.m. on September 22, 2022.[1]  (ECF No. 12).  By letter addressed to the

---

[1] The Court also issued a second order—both orally on September 21, 2022 and in writing on September 22, 2022—that that the "MDC provide [the defendant] medical attention by Friday, September 23, 2022, from a medical doctor to treat her spinal cord injury" and that the doctor "should also evaluate whether the defendant requires a wheel chair" and that "MDC should provide a report to the Court about its progress in complying

Court dated September 23, 2022, counsel for the United States Bureau of Prisons ("BOP Legal") advised that, as of approximately the close of business on September 23, 2022, the defendant "remain[ed] housed in a male housing unit" at the MDC pending the receipt of further guidance by the Central Office Transgender Executive Council ("TEC"). BOP Legal stated that receipt of that guidance by the MDC prior to any transfer of the defendant was necessary to ensure compliance with BOP's statutory, regulatory, and programmatic obligations regarding the established process by which transgender inmates are to be assigned housing units. Accordingly, BOP Legal moved the Court to vacate the Court's order and permit BOP Legal to update the Court regarding the guidance that ultimately issued from TEC concerning the defendant's housing assignment. Following a written submission by defense counsel opposing that motion, the Court issued its order to show cause, directing the government to respond by 9:00 a.m. on the morning of September 26, 2022.

The government submits that the course of conduct here, as discussed in greater detail below, does not warrant a finding of summary contempt under 28 U.S.C. § 636(e)(2), in that the conduct did not involve "misbehavior in the [Court's] presence so as to obstruct the administration of justice." See, e.g., Moore v. T-Mobile USA Inc., No. 10 CV 527 (SLT), 2010 WL 5817644, *1 (E.D.N.Y. Nov. 15, 2010) (magistrate judges authorized under section 636(e)(2) to issue summary contempt orders for misbehavior in the judge's presence that obstructs justice); see generally In re Contempt Order, 441 F.3d 1266, 1268 (10th Cir. 2006) (summary contempt appropriate as a "swift response to contumacious conduct that may portend a threat to a court's immediate ability to conduct its proceedings"). Nor did the conduct rise to the level of criminal contempt, which generally requires proof in a separate proceeding beyond a reasonable doubt of a willful violation of a specific order, or even civil contempt, which generally requires a showing of a violation of an unambiguous order, in which the violator failed to exhibit reasonable diligence in attempting to comply. See, e.g., Fox Industries v. Gurovich, No. CV 03-5166TCP, 2004 WL 1896913, *3 (E.D.N.Y. Jul. 15, 2004).

As an initial matter, the U.S. Attorney's Office ("USAO") and BOP Legal apologize for the failure to timely update the Court on BOP Legal's inability to comply with the order and of BOP Legal's objection to the order. BOP Legal also apologizes for misspelling the Court's name. The Department of Justice holds itself to the highest professional and ethical standards and, as discussed further below, will take additional internal actions to avoid any similar errors in the future.

Nonetheless, the USAO and BOP Legal took steps diligently to comply with the order. The USAO conveyed the substance of the Court's oral order to BOP Legal shortly after the Court issued it on the record on September 21, 2022, and the government (and defense counsel) sent BOP Legal the written order on the morning of September 22, 2022.

---

with this order." The government believes it has complied with this order, but stands ready to address any concerns that the Court or defense counsel may have.

When defense counsel advised the USAO on the morning of September 23, 2022 that it believed the order had not been complied with, the USAO made multiple inquires of BOP Legal as to the defendant's status. BOP Legal advised both the USAO and defense counsel shortly after 2:00 p.m. that it was preparing a response to the Court's order; defense counsel thereafter emailed the Court's deputy to advise that BOP Legal was preparing a response. The USAO received the response from BOP Legal at approximately 4:45 p.m. and immediately transmitted it to the Court and defense counsel.

On Saturday, September 24, 2022, to comply with the Court's order, the defendant was transferred to a new place of confinement located in the women's section of the MDC. Specifically, the defendant is now housed in an open dormitory-style unit located on the women's side of the MDC, and is no longer housed in a male housing unit. The defendant is not presently commingled with any other female inmates.

The Code of Federal Regulations technically requires the defendant to exhaust administrative avenues before seeking judicial intervention concerning conditions of confinement, and includes a procedure for resolving sensitive issues. See 28 C.F.R. §§ 542.13-15. Here, the BOP was not advised of the defendant's request prior to the defendant's raising the request with the Court; nor was the BOP given the opportunity to be heard or to explain the procedures the BOP must follow for inmate reassignment under these circumstances prior to the Court's order. As discussed in the letter from BOP Legal to the Court, the question of unit assignment for transgender inmates (like the defendant) is governed by federal regulations adopted pursuant to the Prison Rape Elimination Act ("PREA"). Consistent with those regulations, BOP makes unit assignments through a process set forth in Program Statement 5200.08, which among other things, directs that BOP compile multiple categories of information from different departments (including Medical and Psychology) at the relevant facility and submit a memorandum to TEC. Per BOP guidelines, no transfer can occur until the TEC issues guidance regarding the particular inmate's situation.

In an effort to comply with the Court's order in a manner consistent with this required process,[2] BOP Legal wrote in its letter that it had completed the collection of

---

[2] As BOP Legal noted in its letter, the unit assignment of a transgender inmate implicates a number of competing interests that are required to be considered by BOP, including, among others, "the inmate's own views with respect to his or her own safety," which are, by regulation, entitled to "serious consideration," as well as "management and security considerations." See 28 C.F.R. §§ 115.42(c), (e). The management of these kinds of competing interests is why – consistent with 18 U.S.C. § 4042(a) – courts typically defer to BOP's statutory discretion in matters of prison administration because "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches." Turner v. Safley, 482 U.S. 78, 84-86 (1987); see also id. at 85 (because prison administration has generally been "committed to the responsibility of [the Legislative and Executive] branches, . . . separation of powers concerns counsel a policy of judicial

3

relevant information for the defendant and submitted a memorandum to TEC requesting guidance on a possible transfer on September 22, 2022. Unfortunately, no guidance had issued by 4:00 p.m. that day or as of the close of business on September 23, 2022, at which point BOP Legal provided its letter to the Court. To be clear, the Court should have been notified prior to 4:00 p.m. on September 22, 2022 that BOP Legal wanted to be heard prior to the order's taking effect. However, BOP Legal was nevertheless endeavoring in good faith to navigate between compliance with the Court's order and compliance with the mandated rules and regulations by which housing assignments for transgender inmates are required to be made.[3]

        Finally, with respect to the manner in which the letter from BOP Legal was conveyed to the Court, as the Court notes, it is not uncommon in this district for BOP Legal to email correspondence addressed to the Court to the USAO for transmission to the Court. In this particular instance, the government transmitted the letter as part of an email chain with the Court's deputy that had been initiated by defense counsel. The government did not understand there to be any intention on the part of BOP Legal to make an ex parte submission, as evidenced by the USAO's prompt transmittal of the letter upon receipt to the Court and defense counsel. The USAO is attaching the letter from BOP Legal as Exhibit 1 to this submission, so that it will be part of the record.

        As the Court directed, the USAO shared the order with its supervisors, including the Chief of the Criminal Division, and, in consultation with them, the USAO will issue guidance to all criminal Assistant U.S. Attorneys to, in the future, file any correspondence that the USAO receives from BOP Legal that is addressed to the Court on the docket of the relevant case. The USAO will also advise BOP Legal that it should advise the USAO (so that the USAO may advise the Court) of any objections to an order addressed to BOP Legal prior to the deadline for the order taking effect. The USAO will similarly

---

restraint."). These concerns apply in the context of pretrial detention as well. See, e.g., United States v. Stile, 1:11-cr-00185-JAW, 2013 WL 12195872, *1 (D. Me. Nov. 27, 2013) ("The law is clear that '[a] pre-trial detainee does not have the right to be housed at the facility of his choice, nor does he have the right to remain in the institution to which he was initially, or even at one time, assigned.'" (quoting Falcon v. U.S. Bureau of Prisons, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994)).

[3]    Notably, the BOP's transfer decisions can carry the risk of legal exposure, and civil complaints have been filed against the BOP in some instances by inmates alleging harm resulting from being housed with transgender inmates. See Fleming v. United States, 21-cv-325-MW-MJF, 2022 WL 1003184, *1 (N.D. Fla. Apr. 4, 2022) (permitting pro se claims of, among other things, intentional infliction of emotional distress to proceed); Driever v. United States, Civil Action No. 19-1807 (TJK), 2021 WL 1946391, *7 (D.D.C. May 14, 2021) (denying motion to reconsider dismissal of pro se claims alleging harm caused by implementation of BOP's transgender housing processes).

4

advise all civil Assistant U.S. Attorneys to follow this guidance should similar circumstances arise in the civil context.

\* \* \*

In an abundance of caution, the government respectfully requests that this letter (and the attached Exhibit 1) be filed under seal to protect the privacy interests of the defendant. See, e.g., Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119, 120 (2d Cir. 2006) (noting that the need to safeguard the privacy interests of individuals involved in an investigation can be a "higher value" that warrants sealing). The government notes that although the defendant's proposed orders were filed publicly on September 22, 2022 (ECF No. 11), the versions of those orders that were signed and issued by the Court were filed under seal (ECF No. 12). Similarly, significant portions of the defendant's opposition to BOP's letter to the Court dated September 23, 2022 were also filed under seal (ECF Nos. 13-14). To the extent that either defense counsel or the Court believes that this letter or any portion of it should not be filed under seal, the government will consider any proposed redactions to this submission by defense counsel and/or the Court and can re-file publicly with those redactions.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  /s/ F. Turner Buford
F. Turner Buford
Andres F. Palacio
Assistant U.S. Attorneys
(718) 254-7000

cc:   Allegra Glashausser, Esq. (by Email and ECF)

5