```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK

-------------------------------X  Docket#
UNITED STATES OF AMERICA,       : 22-mj-01005(RLM)
                                :
                                :
     - versus -                 : U.S. Courthouse
                                : Brooklyn, New York
KARA STERNQUIST,                :
                                : September 21, 2022
             Defendant          : 11:22 a.m.
-------------------------------X

    TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
         BEFORE THE HONORABLE SANKET J. BULSARA
              UNITED STATES MAGISTRATE JUDGE
```

**A   P   P   E   A   R   A   N   C   E   S:**

For the Government:          **Breon S. Peace, Esq.**
                             United States Attorney


                             BY:  **Frank Turner Buford, Esq.**
                             Assistant U.S. Attorney
                             271 Cadman Plaza East
                             Brooklyn, New York 11201



For the Defendant:           **Allegra W. Glashausser, Esq.**
                             **Michael Padden, Esq.**
                             Federal Defenders of New York
                             One Pierrepont Plaza, 16th Fl.
                             Brooklyn, NY 11201




Transcription Service:       Transcriptions Plus II, Inc.
                             61 Beatrice Avenue
                             West Islip, New York 11795
                             RL.Transcriptions2@gmail.com




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1              THE CLERK:  Criminal Cause for a Status
2   Conference, case number 22-mj-1005, *The United States v.*
3   *Kara Sternquist.*
4              Counsel, starting with the government, please
5   state your appearances.
6              MR. BUFORD:  Good morning, your Honor.  It's
7   Turner Buford for the United States.
8              THE COURT:  Good morning.
9              MR. KELLEHER:  Good morning, your Honor.  Denis
10  Kelleher for the defendant.
11             THE COURT:  Okay.  Good morning.  And good
12  morning, Ms. Sternquist.
13             THE DEFENDANT:  Good morning.
14             THE COURT:  Ms. Sternquist, you can remain
15  seated.  I just need you to speak into the microphone,
16  okay?  Just let me remind you you have a couple of
17  rights.  Okay?
18             THE DEFENDANT:  Yes, sir.
19             THE COURT:  You have a right to remain silent
20  which means you don't have to make a statement at any
21  time.  You also have a right to counsel, which means a
22  right to have a lawyer represent you.  If you couldn't
23  afford a lawyer, the Court would appoint one for you.  Do
24  you understand that?
25             THE DEFENDANT:  Yes, your Honor.

Proceedings                                                3

1    THE COURT: Okay. Go ahead, counsel.
2    MR. KELLEHER: Judge, I believe you've seen our
3    letter. My firm is making an application to be relieved
4    as private counsel. Initially, it was conveyed to us
5    that there was going to be money coming forth and that
6    has not come to fruition. This is a complicated matter
7    just on a cursory view of the complaint. We would ask to
8    be relieved.
9            We also currently do not have any bail package
10   to put forth to the Court. It was initially on today for
11   a detention hearing. So we would, obviously assuming the
12   Court appoints new counsel, we would consent to detention
13   without prejudice to make a new application should a bail
14   package come forward.
15           THE COURT: Okay. Ms. Sternquist, just so you
16   understand, your current counsel and his firm are seeking
17   to be what's known as relieved meaning they're seeking to
18   be replaced. The basis that they're saying that they
19   should be relieved is that you're unable to pay for their
20   services. Okay? Now as I explained briefly, very
21   briefly, if someone can't afford a lawyer, the Court
22   appoints a lawyer for them. So just because a lawyer
23   withdraws doesn't mean that you left without a lawyer.
24   Do you understand what I've explained?
25           THE DEFENDANT: I think so, your Honor.

```
                                                                    4
                         Proceedings
1            THE COURT:  Okay.  And so what I'm going to do
2  based on your financial affidavit is appoint the Federal
3  Defenders to represent you.  Okay?  And I'm going to
4  grant the application for your current counsel to
5  withdraw.  Okay?  And so do you understand what I'm doing
6  now?
7            THE DEFENDANT:  Yes, your Honor.
8            THE COURT:  Now, there is a question about a
9  bail application?  Okay?  In other words, I understood
10 that today we were supposed to have potential application
11 made to the Court about you getting out on bail.  I don't
12 have that application right now because your counsel is
13 withdrawing.  That being said, okay -- are you okay?
14           THE DEFENDANT:  Just very emotional about this
15 because I was under a different impression.
16           MR. PADDEN:  Yeah, we're going to get someone
17 to talk to you.  Okay.  This is going to be reviewed by a
18 lawyer from my office.
19           THE COURT:  Hold on.  Mr. Padden, why don't you
20 wait a second, okay?
21           MR. PADDEN:  Pardon me, Judge?
22           THE COURT:  Why don't you wait a second?
23           MR. PADDEN:  Oh, I'm sorry.
24           THE COURT:  Ms. Sternquist, in order for your
25 new lawyer to get some time to talk you to this morning
```

Proceedings

5

and then tell me what we're going to do about bail including, for example, whether she's going to make a bail application later today or at some point in the near future, I'm going to have this case put on for another, what's known as another call for this afternoon.

THE DEFENDANT: Okay.

THE COURT: Which means that Ms. Glashausser and the Federal Defenders will have some time from now until this afternoon to chat with you. Okay? And they'll let us know whether you're going to be ready to present a bail package this afternoon or we need to put it on for a date that's relatively close in the future or further out, whatever you and your lawyer decide is the best option for you. Okay? So just in case you have a bail application to present this afternoon, I'll put it on for a second call. Okay?

Now, Ms. Glashausser may say to you, and those are conversations that are confidential and privileged, but she may say to you look, we're going to put it on for another day so I can present a package or she may say we want to be heard before the Court today. That's a discussion you'll have with her. Okay? But for now, I'm putting it on for this afternoon and then we'll wait to hear from your lawyer as to whether we're going forward with that. Okay? But you'll have an opportunity to talk

Proceedings

6

1  with her from now until then.  Okay?
2              THE DEFENDANT:  Okay.
3              THE COURT:  All right.  Anything else from the
4  government?
5              MR. BUFORD:  Not from the government, your
6  Honor.
7              MR. KELLEHER:  Nothing for me, your Honor.
8  Thank you.
9              THE COURT:  Okay.  Mr. Padden, anything at this
10 point?
11             MR. PADDEN:  Judge, I don't know anything to
12 relate to the Court so I will defer to Ms. Glashausser.
13 I would stay and do it but I'm overdue somewhere else
14 right now.  But I get word to Ms. Glashausser and speak
15 to her.  But I don't know any concerns currently that
16 won't be addressed by Ms. Glashausser later.
17             THE COURT:  All right.  So I'm granting the
18 motion to be relieved.  I'm appointing the Federal
19 Defenders.  And I will put it on for bail this afternoon
20 unless we hear from Ms. Glashausser that it should be
21 postponed.  Okay.  Have a nice day, everybody.
22             MR. PADDEN:  So there will be a lawyer to speak
23 to you.
24                       (Off the record)
25             THE CLERK:  Case number 22-mj-1005, *United*

Proceedings 7

1 *States v. Kara Sternquist.*

2 Counsel, starting with the government, please
3 state your appearances.

4 MR. BUFORD: Good afternoon, your Honor. It's
5 Turner Buford for the United States.

6 THE COURT: Good afternoon.

7 MS. GLASHAUSSER: Good afternoon, your Honor.
8 Allegra Glashausser representing Ms. Sternquist who is
9 here with me.

10 THE COURT: Good afternoon, and good afternoon,
11 Ms. Sternquist.

12 I just want to confirm, Ms. Glashausser,
13 because of the change in counsel, part of the reason I
14 wanted a second call was to make sure you had an
15 opportunity to meet with your client at least briefly to
16 make sure that she met with her new counsel. Were you
17 able to do that?

18 MS. GLASHAUSSER: Yes, your Honor. I have met
19 briefly with Ms. Sternquist.

20 THE COURT: Okay. And the other issue to bring
21 up was it was originally scheduled for a bail hearing
22 today with the anticipation of a bail package being
23 presented. And so what's the status of that? Would you
24 like me to put it on for another date?

25 MS. GLASHAUSSER: So the status is just because

Proceedings

8

1 of the length of time that I had to meet with Ms.
2 Sternquist, which was very short, I don't have a bail
3 package right now.  I hope to have one in the future, but
4 I'll reach out to the clerk's office when we have a
5 package together.
6         THE COURT:  Okay.  Ms. Sternquist, I'm going to
7 give your lawyers an opportunity to determine a bail
8 package to present to the Court.  Okay?
9         THE DEFENDANT:  Okay, your Honor.
10         THE COURT:  All right.  Anything else?
11         MS. GLASHAUSSER:  Yes, your Honor.  There's two
12 matters I'd like to bring up.  The first is a medical
13 order but if your Honor would like me to put that in
14 writing for Ms. Sternquist as well, I can do that.
15         THE COURT:  That's fine unless -- I realize Ms.
16 Sternquist has been in custody for a number of days.  And
17 if there is a lack of medical attention in response to a
18 previous medical order that you need to put on the record
19 because of additional action, I'm happy to let you do
20 that.  Otherwise, you know, a medical memo is fine.
21 Whatever you prefer me doing.  But whatever you ask for
22 related to medical treatment I will almost certainly
23 grant.
24         MS. GLASHAUSSER:  So I would ask your Honor to
25 order that MDC give her -- have a doctor see her.  I

Proceedings

9

1 believe the previous medical order she was seen by -- I'm
2 not sure who it is.  It's not a doctor who sees people
3 when they first come through the facility.  She is in
4 significant amount of pain and she has a spinal injury
5 and needs I think significant medical treatment which MDC
6 has not addressed at all.
7          THE COURT:  Can I ask a question?  Is there a
8 specific type of doctor that she needs or in the first
9 instance we just need an MD?
10         THE DEFENDANT:  I think it's just an MD, just
11 somebody that can give me something to do with pain and
12 also my wheelchair issue and other medications that they
13 haven't been giving me.
14         MS. GLASHAUSSER:  So I'm sure your Honor could
15 hear that, but as it has worked when it works at all at
16 MDC, I think first a doctor sees my client and then if a
17 specialist is needed, they can send the person to the
18 specialist.  She does believe that she needs a wheelchair
19 as well.  She has significant mobility issues I think as
20 your Honor saw as she walked out.
21         THE COURT:  Okay.  I assume the government
22 doesn't want to be heard on any of this?
23         MR. BUFORD:  We certainly have no objection,
24 your Honor.
25         THE COURT:  Okay.  Ms. Glashausser, I'm happy

10
Proceedings

1  to order that she be seen by a doctor within, you know,
2  today is Wednesday, by Friday.  Do you want to propose a
3  formal order to me or do you want me to just say it on
4  the record?  Whatever is easier.  I've had counsel in the
5  past give me an order that I literally sign that says in
6  light of the various experiences people have had.  I
7  don't know what works best.  So I will order that the MDC
8  have a medical doctor see Ms. Sternquist no later than
9  Friday of this week close of business and provide a
10 report to me thereafter about the evaluation as well as
11 to her counsel.  So that's on the record.  If you need me
12 to sign something, I will do that as well.
13         MS. GLASHAUSSER:  In the old days, your Honor,
14 we used to have paper forms.  I understand from speaking
15 to the Court's deputy that we can do it by email.  I
16 don't know if a formal order is needed or not.  I'm happy
17 to write one up.  Candidly, we have a number of cases
18 today, so if it can be done faster by email from the
19 deputy, I think that would be preferable.
20         THE COURT:  That's fine.  I'm only pointing out
21 that we had some difficulty with those standard medical
22 orders.
23         MS. GLASHAUSSER:  Yes.
24         THE COURT:  And so I have taken it in recent
25 months to signing a more formal order including one, and

Proceedings
11

1   I hate to put a different lawyer in the hot seat, but Ms.
2   Kellman has one that I've issued and she was just here.
3   You can ask her.
4           MS. GLASHAUSSER:  Okay.
5           THE COURT:  It looks like a more formal with a
6   caption and a signature block.  If that's what you mean,
7   I will do it but we'll start here, but I can do the other
8   one which has --
9           MS. GLASHAUSSER:  Thank you, your Honor.
10          THE COURT:  -- proven a little bit more
11  effective.
12          MS. GLASHAUSSER:  Understood.  I can drop the
13  more formal one tomorrow for the Court.
14          THE COURT:  Okay.
15          MS. GLASHAUSSER:  The second matter is Ms.
16  Sternquist is currently being housed on the men's side of
17  MDC.  I would ask your Honor to issue a court order to
18  transfer her to the women's side.  She is a transgendered
19  woman, has been a woman for some time now as your Honor
20  can see.  Her paperwork currently is all in her name as a
21  woman.  And you know, I have the policy of BOP is to
22  follow court orders when there are transgendered
23  individuals who are incarcerated to place them with the
24  current gender.  I can give your Honor that policy number
25  if it would help.  I do believe that Ms. Sternquist is at

Proceedings

12

1 risk being placed on the men's side of MDC and that she
2 should be moved as soon as possible.
3       THE COURT: Okay. Government want to be heard
4 on this?
5       MR. BUFORD: Your Honor, in consultation with
6 the BOP legal, my understanding is that based on whatever
7 intake is done at the MDC that Ms. Sternquist is likely
8 to be assigned to the male unit from their perspective.
9 I don't know that a final decision has been made on that.
10 According to BOP legal, they were consulting with their
11 main office on the issue which I raised with them.
12 That's the latest information that I have.
13       THE COURT: And I realize you're in a difficult
14 position. That's not particularly helpful to me.
15       MR. BUFORD: I understand.
16       THE COURT: And it's not -- because it doesn't
17 address both what's been represented by counsel -- and
18 I'm not casting aspersions on you in particular, but it
19 doesn't answer what's been addressed by counsel but also
20 what's on the face of the Pretrial Services report.
21       MR. BUFORD: I understand, your Honor.
22       THE COURT: Which I think made quite clear that
23 I should issue the order. So Mr. Long, do you want to be
24 heard on this in any way? You don't have to. I have the
25 Pretrial report.

                                                                   13
                              Proceedings

1            MR. LONG:  Unfortunately, your Honor, I would
2    have to say after all my time here I don't have any
3    experience or guidance to provide the Court at this
4    moment on this matter.
5            THE COURT:  Okay.
6            MR. LONG:  On face value, was the charging
7    document placed in -- what basis was the charging
8    document put in in her name?  And is that enough to in a
9    sense the government's position in some sort --
10           THE COURT:  Yes.  I guess I was -- Mr. Buford,
11   I don't know if you know, but what was the original
12   classification based upon?  What does it mean to say
13   initial intake?  You know --
14           MR. BUFORD:  Your Honor, in terms of what
15   decision was made by MDC, I can't speak to that as far as
16   what the criteria is.  Again, I don't want to get out
17   over my skis, but I assume they're aware of the policy.
18   And based on whatever intake they did, they elected to
19   make an initial assignment as I understand it to a male
20   unit.  But it's also my understanding that that's not
21   necessarily the last word.  But that's all that I have to
22   say to the Court at this time, unfortunately.
23           THE COURT:  Okay.  Since I don't have a
24   contrary position really at this point and I have no one
25   from -- Ms. Glashausser, do you need a written order?

14
Proceedings

1  MS. GLASHAUSSER:  I think for this one probably
2  a written order makes sense.  But again, if it can be
3  done quicker to have the Court's order go through email
4  from the deputy and I can follow up tomorrow.
5  THE COURT:  That's fine.  Do you want to give
6  proposed language?  Because this is not a typical order
7  we issue, but we can simply say --
8  MS. GLASHAUSSER:  I don't think it needs to be
9  anything fancy, your Honor.  Just that --
10  THE COURT:  No, no, I want -- can you give me
11  the CFR cite if you have it?
12  MS. GLASHAUSSER:  Yes.  It's from the PREA, the
13  Prisoner's Rape Elimination Act, Section 28 CFR 115.42(c)
14  which says that the BOP should take into account a court
15  order when making the designation.  There is also -- and
16  again, I didn't have a lot of time on this case, your
17  Honor, but there is a manual that the BOP has for
18  individuals who are transgender.  I believe that Ms.
19  Sternquist meets the criteria to be housed in the women's
20  unit as she is legally a woman and has gone through many
21  clinical transition steps.
22  I would note also that as far as I know, the
23  intake process that MDC used to decide to the contrary
24  was a physical examination which is shocking to me that
25  that could possibly be their criteria and that was

15
Proceedings

1 harmful to Ms. Sternquist and that your Honor's decision
2 to do this order is the correct one.
3          (Pause in proceedings)
4          THE COURT:  Okay.  This is just sort of for the
5 government's benefit.  I mean I think CFR 115.41, the
6 preceding provision, makes clear what the screening
7 should include.  And so, you know, to the extent that
8 they're going to seek reconsideration of my order, they'd
9 have to demonstrate all of what they found with respect
10 to the ten different criteria here.  And my worry about
11 not issuing an order today would be that Subsection (f)
12 of 115.41 provides the next reassessment has to be done
13 no later than 30 days from the initial one.  And so my
14 worry is that we would be in a potentially harmful
15 position with respect to Ms. Sternquist's safety.
16 Obviously, the BOP can seek reconsideration upon the
17 order I'm going to issue today.
18          And Ms. Glashausser, you're asking that Ms.
19 Sternquist be housed in the female unit at MDC?
20          MS. GLASHAUSSER:  Correct, your Honor.
21          THE COURT:  Okay.  I'm ordering that that be
22 done promptly.
23          MS. GLASHAUSSER:  Thank you, your Honor.
24          THE COURT:  Meaning within the next 24 hours.
25 Okay.  Anything else?

16
Proceedings

1         MS. GLASHAUSSER: No, your Honor.
2         MR. BUFORD: Your Honor, obviously we don't
3  necessarily take a position one way or the other. We
4  sort of defer to the BOP on this and we want what's best
5  for everybody. In the event that there is an application
6  to reconsider, would we come back to your Honor if in
7  consultation with BOP there's some objection to this
8  order that we don't know about at this point?
9         THE COURT: If it's for a reasonable time
10 today. But sure. If not, you should go to whoever's on
11 duty.
12        MR. BUFORD: Understood, your Honor.
13        THE COURT: If the duty judge has questions or
14 either side has questions, I also think that just so the
15 BOP understands, they can seek reconsideration but Ms.
16 Sternquist and counsel have an opportunity to be heard
17 and be present at that.
18        MR. BUFORD: Okay.
19        THE COURT: Which takes some scheduling which
20 is why --
21        MR. BUFORD: I understand, your Honor.
22        THE COURT: Okay. All right.
23        MS. GLASHAUSSER: Your Honor, I apologize, just
24 going back to the medical order?
25        THE COURT: Yes.

Transcriptions Plus II, Inc.

Proceedings

17

1     MS. GLASHAUSSER: Ms. Sternquist has just asked
2 for an order to have a wheelchair. She had a wheelchair
3 before she was arrested. And I didn't realize this, but
4 MDC has said that they cannot give her one I believe
5 without a court order.
6     THE COURT: Well, this I'm going to need a
7 little bit more on.
8     MS. GLASHAUSSER: Okay.
9     THE COURT: In part because we're actually
10 giving something that goes into the facility as opposed
11 to where the person resides. And so if there is a -- if
12 you find out that they actually need a written order from
13 me, I will issue that. And I don't know whether it means
14 that I'm requiring them to give her a wheelchair, that is
15 one they have, or one that a medical provider provides or
16 one that she used before. And so I'm happy to look at
17 that. But at this point I can't order that.
18     MS. GLASHAUSSER: Can I propose -- or would it
19 be appropriate to put in the medical order that she be
20 seen by a doctor and evaluated for a wheelchair?
21     THE COURT: That's fine. Yes.
22     MS. GLASHAUSSER: Okay. Thank you, your Honor.
23     MR. BUFORD: Just one last clarification.
24     THE COURT: Yes.
25     MR. BUFORD: And it anticipates another

                                                                18
                            Proceedings

1  question.  The order to house her in the female unit,
2  when your Honor said promptly, you said within 24 hours.
3  I just anticipate whether or not they'll be able to
4  accommodate that this evening.
5            THE COURT:  That's why I said 24 hours.
6            MR. BUFORD:  No, I just want to make sure.
7            THE COURT:  In recognition of what may be
8  needed to be done.  I don't know.  It doesn't seem like
9  it would take more than 24 hours and that's why --
10           MR. BUFORD:  I'm going to communicate it as
11 promptly as I can, your Honor.
12           THE COURT:  Understood. Okay.  Anything else?
13           MS. GLASHAUSSER:  No, your Honor.  Thank you.
14           MR. BUFORD:  Thank you, Judge.
15           THE COURT:  All right.  Have a nice day,
16 everyone.
17           THE CLERK:  Thank you.
18                  (Matter concluded)
19                       -oOo-

19

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **26th** day of **September**, 2022.

*Mary Greco*
Transcriptions Plus II, Inc.