UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA　　　*　　Case No. 22-CR-00473(DLI)
　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*　　Brooklyn, New York
　　　　　　　　　　　　　　　　*　　October 19, 2022
　　　v.　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
KARA STERNQUIST,　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Defendant.　　　　*
　　　　　　　　　　　　　　　　*

* * * * * * * * * * * * * * * *

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:　　　　　F. TURNER BUFORD, ESQ.
　　　　　　　　　　　　　　ANDRES PALACIO, ESQ.
　　　　　　　　　　　　　　Asst. United States Attorneys
　　　　　　　　　　　　　　United States Attorney's Office
　　　　　　　　　　　　　　271 Cadman Plaza
　　　　　　　　　　　　　　Brooklyn, NY 11201


For the Defendant:　　　　　ALLEGRA W. GLASHAUSSER, ESQ.
　　　　　　　　　　　　　　Federal Defenders of New York
　　　　　　　　　　　　　　One Pierrepont Plaza, 16th Fl.
　　　　　　　　　　　　　　Brooklyn, NY  11201




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

```
 1              (Proceedings commenced at 4:32 p.m.)

 2              THE CLERK:  Criminal cause for arraignment on

 3      indictment number 22-CR-473, United States against

 4      Sternquist.

 5              Will the parties please state your names for the

 6      record.

 7              MR. BUFORD:  Good afternoon, Your Honor.  For the

 8      Government, it's Turner Burford and Andy Palacio.  And we're

 9      joined at counsel table by Sophia Papapetru from the Bureau

10      of Prisons Legal Department.

11              MS. GLASHAUSSER:  Good afternoon, Your Honor.

12      Allegra Glashausser, representing Ms. Sternquist, who is on

13      the phone with us.

14              THE CLERK:  The Honorable Lois Bloom presiding.

15              THE COURT:  Good afternoon, Mr. Buford, Mr.

16      Palacio, Ms. Papapetru and Ms. Glashausser.

17              And good afternoon, Ms. Sternquist.  Can you hear

18      me, ma'am?

19              THE DEFENDANT:  Yes, I can, Your Honor.

20              THE COURT:  Okay.  We were scheduling today's

21      conference because of the medication that had been ordered to

22      be provided to you.

23              But yesterday, no, two days ago, the government

24      went before the grand jury and the grand jury returned an

25      indictment against you charging you with three counts.
```

1          So, Ms. Sternquist, have you had the opportunity to

2    review the indictment with your attorney?

3          THE DEFENDANT:  Yes, I have, Your Honor.

4          THE COURT:  And do you understand the charges that

5    are being made against you?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And, Ms. Glashausser, have you had the

8    opportunity to review the indictment with your client?

9          MS. GLASHAUSSER:  Yes, Your Honor.

10          THE COURT:  And does she understand the charges?

11          MS. GLASHAUSSER:  Yes, Your Honor.

12          THE COURT:  And have you advised her of her

13    constitutional rights?

14          MS. GLASHAUSSER:  Yes, Your Honor.

15          THE COURT:  And do you wish me to read the

16    indictment aloud?

17          MS. GLASHAUSSER:  No, Your Honor.

18          THE COURT:  And is your client prepared to enter a

19    plea?

20          MS. GLASHAUSSER:  Yes.  She pleads not guilty.

21          THE COURT:  A plea of not guilty shall be entered

22    on behalf of Kara Sternquist to all counts in the indictment.

23          Pursuant to Federal Rules of Civil Procedure 5(f),

24    I remind the prosecution of it's obligation under *Brady vs.*

25    *Maryland* and its progeny to disclose to the defense all

4

1    information whether admissible or not that's favorable to the

2    defendant, material either to guilt or to punishment and

3    known to the prosecution.

4            The prosecution must make good-faith efforts to

5    disclose such information to the defense as soon as

6    reasonably possible.  I will enter a written order more

7    describing this obligation and the possible consequences of

8    failing to meet it and I direct the prosecution to review and

9    comply with that order.

10           Does the prosecution confirm that it understands

11   its obligations and will fulfill them?

12           MR. BUFORD:  Yes, Your Honor.

13           THE COURT:  Thank you.

14           So Ms. Sternquist has been hospitalized and the

15   medical staff were supposed to get a third medication that

16   has been detailed to either Ms. Sternquist in the hospital or

17   get whatever the -- I don't really understand why BOP

18   couldn't just pass the prescription to the Brooklyn Hospital

19   Center and have them provide the medication, but please let

20   me know, Mr. Buford, where are we?

21           And, again, there had been an order of the Court.

22   I was then asked to stay the order of the Court.  I denied

23   that request.  And I appreciate that the Government had

24   gotten two of the medications to Ms. Sternquist, but I put it

25   on today saying that you could cancel if the third medication

1        had been provided.  I also signed an order yesterday for Ms.

2        Glashausser to be able to have calls with her client.

3               So tell me where we are, sir.

4               MR. BUFORD:  Your Honor, let me not bury the weed.

5        My understanding from defense counsel is that the defendant

6        is receiving the third medication at the hospital.

7               And the issue from our perspective was that our

8        medical information was that, as of October 12th, we had been

9        advised or BOP medical had been advised, that given the

10       nature of the medication the hospital policy was not to

11       dispense it to anyone without a consultation by the attending

12       psychiatrist at the hospital, and that the issue was not

13       access to the drug, per se, which is relatively commonly

14       available, but rather that that consultation had not

15       occurred.

16              It's my understanding -- this is sort of a

17       deduction rather than first-hand information -- that the

18       consultation has occurred and that the drug is now being

19       provided to the defendant along with the two other -- the two

20       other antidepressants, Your Honor, that were also the subject

21       of -- or at least on the list of the medications defendant

22       had originally attached to her motion.

23              THE COURT:  Let me just ask, Ms. Glashausser, has

24       she now received -- has your client, Ms. Sternquist, now

25       received the third medication?

6

1          MS. GLASHAUSSER:  Yes.  My understanding is that is

2     correct.  I learned that right as we were standing in this

3     courtroom when the paralegal arrived at her hospital bed

4     today.  So, yes.

5          THE COURT:  So my question, since we have had Ms.

6     Papapetru come today, is why does it take this much?

7          I mean, clearly Ms. Sternquist does not have any

8     control over where she is sent.  She has no control over what

9     the BOP provides to wherever she is sent.

10          And looking at the docket sheet, which hopefully

11    Judge Irizarry will look, it took Judge Bulsara, it took

12    Judge Komitee, it took Judge Levy, Judge Mann, Judge Reyes

13    and myself in order for Ms. Sternquist to get the medication

14    that she should have been receiving.

15          So I don't know if you want your agency client to

16    speak for herself, but I am, you know, quite concerned, as I

17    told Mr. Palacio when I spoke to him over the weekend, I got

18    two requests in one weekend. One was on Friday I guess and

19    one was on Saturday, different case, not this case, but to

20    stay orders of the Court regarding medical attention at BOP,

21    and I think it's fair to say that this is a matter of great

22    concern to the magistrate judges.

23          So, Mr. Buford, do you want to address this or do

24    you want Ms. Papapetru to address it?

25          MR. BUFORD:  Your Honor, only to say that we do

1    take the orders seriously in an endeavor to comply.

2         My understanding is this particular order that was

3    -- transferred medication from one facility to another is

4    something that hasn't come up before or at least not very

5    commonly and there's no established protocol at MDC to do

6    that.  And I think --

7         THE COURT:  And now's the time.

8         MR. BUFORD:  Well, I think in receipt of the order,

9    Your Honor, there were some practical concerns that arose,

10   which is, you know, making sure that the hospital would

11   accept delivery of drugs from another institution.

12        That, in fact, even if we were to bring it that

13   they would sort of provide it.  Because my general

14   understanding is that even if you bring in your own

15   prescriptions that doesn't necessarily mean the hospital

16   would sort of take those drugs, accept them for what they are

17   and give them to the patient.

18        THE COURT:  I understand.  It's the same thing when

19   somebody is arrested and they're bringing the drugs that they

20   generally need to survive in their pocket.  It's not as if

21   BOP will let those drugs into the facility, but they could

22   take note of what the drugs are and try to provide the

23   equivalents.

24        MR. BUFORD:  I think that that happens when the

25   patient's transferred to the hospital.  In other words, the

1    hospital gets a set of paperwork from MDC as to sort of what

2    the patient is on and then the hospital I think makes its own

3    assessment as to what drugs are appropriate and makes their

4    own judgment as to what to prescribe.

5              THE COURT:  But, again, we go back to the initial

6    problem, which is Ms. Sternquist didn't choose where to go.

7    Ms. Sternquist is not in control of what the BOP is providing

8    or failing to provide.

9              And I'm just going back in the case, and I

10   understand it's not what's at issue here, but the order to

11   show cause that was issued by my colleague, Judge Bulsara, in

12   this case is scathing and talking about the BOP not complying

13   with orders of the Court and, again, threatening contempt

14   proceedings.  This is not an everyday occurrence.

15             MR. BUFORD:  I understand, Your Honor.  And I think

16   given that this issue has now recurred a couple of times, and

17   as the Court noted, maybe not on the record, but a

18   representative of our civil division is here who deals with

19   MDC issues on an ongoing basis.

20             We now will I think endeavor to come up with some

21   sort of established system to at least address this.  Or if

22   there are concerns, bring them promptly to the attention of

23   the Court if there's a good medical reason or logistical

24   reason why the order presents difficulties.

25             We want to be transparent about what we're trying

1    to do to comply and the issues that we may, in good faith, be

2    running into in trying to do that.

3            THE COURT:  And I understand that the Court are not

4    doctors.  But, again, it's completely an aside but we don't

5    want to take the word third hand.

6            Ms. Papapetru, I'm sure you have a very tough job,

7    but we're not going to take the word third hand of somebody

8    that works for BOP that the Court's orders are being taken

9    seriously.  That is not sufficient.

10           And in this case I'm glad that Ms. Sternquist got

11   her third medication, but it shouldn't take several orders of

12   the Court.  And I do understand it's a little bit of an

13   outlier.  Ms. Sternquist's situation was a little bit

14   different than most BOP situations.

15           But that this has come up and has been made a topic

16   for all of the magistrate judges of the Court.  If we cannot

17   trust United States Attorneys who are standing up saying that

18   they've gotten this information from their client at BOP,

19   that's going to be a big problem.

20           MR. BUFORD:  I understand that, Your Honor.  I

21   don't know that our information has been inaccurate at any

22   point, but I appreciate the point, Your Honor.

23           THE COURT:  Ms. Glashausser, do you want to be

24   heard on this?

25           MS. GLASHAUSSER:  Thank you, Your Honor.

1          Just to comment a little bit more on the broader

2     context, the original medical order that was signed at Ms.

3     Sternquist's initial appearance and then again at the second

4     appearance a week later was ignored until all those things

5     started to happen.

6          The reason she is in the hospital is because she

7     hadn't received medical care when she entered the BOP.  So

8     it's not just about the third medication.  She's still in the

9     hospital now three and a half weeks later because of what

10    happened when she first was arrested.

11         And I think Your Honor is exactly right that it's

12    extremely concerning that we can get these court orders and

13    nothing happens.

14         With respect to the phone call order that Your

15    Honor had signed, I spent much of yesterday trying to receive

16    that phone call.  I never did.

17         Now Ms. Sternquist has been transferred from the

18    MDC's custody to the Marshals' custody so I believe it will

19    be smoother, but that's just another example of an order that

20    did not have I think, Your Honor, the intended effect.

21         THE COURT:  Mr. Buford, this is really an issue.

22         MR. BUFORD:  It is, Your Honor.  I understand the

23    order directed us to provide two phone calls a week to

24    defense counsel.  There was unfortunately a transition

25    yesterday from the custody of BOP to the custody of the

1    Marshals which frustrated the attempt to have a call

2    yesterday, but I understand that that transfer successfully

3    occurred and that defense counsel will be in a position to

4    have the two calls this week that were the subject of the

5    order.

6             THE COURT:  I understand going forward that perhaps

7    now that BOP is not involved, but that BOP has had a

8    significant role in thwarting the Court's orders.

9             Again, Ms. Papapetru, you're going to be at some

10   point the one on the witness stand under oath with sanctions

11   taken against you or your employer.  There's no other way

12   that we can get this to turn out differently because

13   unfortunately the civil case is taking forever.  It's not

14   your fault.

15            But the civil case is -- I won't say it's less

16   important, but it's different than a person's constitutional

17   rights who's in custody and control of BOP.

18            And, Mr. Buford and Mr. Palacio and Ms. Papapetru,

19   I know there's a new warden.  This has got to be brought up.

20            I'm sorry to take your time, Ms. Sternquist, on

21   this but I was the magistrate judge that had the guy who had

22   been accused out in Islip of assaulting the CSOs.  And he had

23   been in custody for about 30 days, not totally all within

24   BOP, he had been out in Suffolk County.  He had 18

25   medications that he was, you know, supposedly going to get.

12

1    He had gotten none of them.

2              So it's over and over again, the same thing, and I

3    have no explanation for it, Mr. Buford.  But you, as a

4    supervisor in the office, and Mr. Palacio, you're going to be

5    the ones that are disbelieved by the Court and called on the

6    carpet.

7              And at some point Ms. Papapetru and the warden are

8    going to be in the chair having to testify under oath if this

9    continues.

10             This is just -- I know she wants to say something,

11   so let her say something to you and you can tell her whether

12   she wants to say it to the Court.

13             MR. BUFORD:  Your Honor, if we may have one minute?

14             THE COURT:  Certainly.

15             MR. BUFORD:  Thank you.

16             MR. MODAFERRI:  Your Honor, if the Court allows,

17   may I address (indiscernible) I'm not assigned --

18             THE COURT:  You can come up after you have this

19   little colloquy together.

20             MR. MODAFERRI:  Sure.  Thank you.

21             THE COURT:  Ms. Sternquist, I'm allowing the

22   defense counsel the time, just like I afforded you the time

23   to speak to your attorney, without it being on the record, so

24   forgive us that you're not privy to what is being talked

25   about.  But Ms. Glashausser and I are sitting patiently

1    waiting for the Government lawyers to speak about these

2    matters.  Okay?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  How are you feeling, Ms. Sternquist?

5              THE DEFENDANT:  I'm feeling okay at the moment.

6    I'm in a lot of pain in my condition.

7              THE COURT:  I'm sorry to hear that.  I'm glad that

8    you have such a good attorney so you know that you have

9    people fighting for you.  Okay?

10             THE DEFENDANT:  So am I, Your Honor.

11        (Pause)

12             MR. BUFORD:  Thank you, Your Honor.

13             If the Court will permit, AUSA Matt Modaferri --

14             THE COURT:  Of course.  Mr. Modaferri, nice to see

15   you.

16             MR. MODAFERRI:  Nice to see you too, Your Honor.

17             Just as background, and Ms. Glashausser mentioned

18   ignoring orders, there's countless hours that are spent when

19   a court order is issued both by members of the civil

20   division, myself, the attorneys from the criminal division,

21   members of BOP.

22             So that aside, with respect to the order that was

23   issued here by Your Honor with respect to the medications,

24   the same happened.  Countless hours were spent trying to

25   figure out what the process was, how to comply with the

14

1    Court's order, steps forward, steps for the future so that

2    this doesn't happen.

3           And in addressing all of those considerations what

4    we've learned is, one -- and I understand Your Honor's point

5    that the defendant doesn't get to pick and choose which

6    hospital the BOP decides to send her for outside treatment, I

7    totally get that, but legally speaking once that transfer of

8    care is made the MDC doctors can't say you have to give her

9    these medications.  The best they can do is get on the phone

10   with the doctor who's currently providing the treatment and

11   make a recommendation.

12          THE COURT:  Did that happen?

13          MR. MODAFERRI:  Yes, it did.

14          THE COURT:  Can I also ask you though the situation

15   that Ms. Sternquist is in is because she wasn't getting

16   treated at MDC.  She didn't go to the hospital because she

17   chose that.  She went because she was too sick.

18          MR. MODAFERRI:  My understanding was that she, and

19   again I'm not up to speed on that particular point, my

20   understanding is that she developed an infection from

21   something that happened at MDC.

22          So she was getting treatment, whether it was

23   proper, something happened that was a side effect, I don't

24   know, but Your Honor is correct in that something regarding

25   the treatment that happened at MDC resulted in her having

1    that infection.

2              I don't even want to make that leap because perhaps

3    it was some other cause, but something happened that required

4    that she seek treatment at an outside hospital.

5              THE COURT:  Well, let me just say, this is on

6    document 31, page 8, Judge Komitee's decision, it says

7    Sternquist represents, and the prosecution has not disputed,

8    that she is in the hospital because of delays and errors in

9    medical treatment by personnel of the MDC.  That's in the

10   order.

11             So I'm going by what the record of the Court is.

12   And so saying that countless hours were spent, et cetera,

13   countless hours spinning wheels doesn't help.  People's lives

14   are at stake here.

15             MR. MODAFERRI:  Understood, Your Honor.  I fully

16   appreciate Judge Komitee's order, but without speaking to the

17   doctor who provided the care, I'm not willing to make that

18   jump here today just not knowing all the facts.  And quite

19   frankly, in my experience, getting a hold of the MDC's

20   doctors is a --

21             THE COURT:  Ridiculous.

22             MR. MODAFERRI:  -- is a tough task.

23             THE COURT:  Ridiculous.

24             MR. MODAFERRI:  So it could have been, and again

25   I'm surmising, that Mr. Buford probably just didn't have that

1    information.  Whoever the attorneys were on the case before

2    Judge Komitee just didn't have that information just like I

3    don't.

4              THE COURT:  That goes to the heart of this, Mr.

5    Modaferri.  Because, again, you as a U.S. Attorney, Mr.

6    Palacio, Mr. Buford as U.S. Attorneys are standing up in

7    front of us.

8              And I can tell you from when I was asked to set the

9    guy from, I'm sorry, I'm forgetting his name, he had a very

10   common name, the guy from Central Islip, it was Mr. Sugar

11   from the Islip Federal Defenders who asked for permission for

12   him to be released into Mr. Sugar's care so Mr. Sugar could

13   drive him to the Northport VA so he could get treatment

14   because he had not gotten treatment while he was at the MDC.

15             And believe me that was not a decision that I took

16   lightly to release somebody.  I was scared that Mr. Sugar

17   could be on the side of the road and it would be my fault

18   that I had released him.

19             But on the flip side of it, it should be a death

20   sentence to be put into MDC's care and that people are having

21   to go to the hospital doesn't surprise anyone.

22             So when you're saying that you're trying to put

23   things in place, you know there's been a lawsuit pending for

24   several years now.

25             MR. MODAFERRI:  Right.  And I can't speak to that

17

1      other case.  I don't --

2                  THE COURT:  Of course.

3                  MR. MODAFERRI:  I don't have that information.  But

4      all I'm --

5                  THE COURT:  But what I'm saying is if you're

6      standing up and you don't have the information, who has the

7      information?  And why is that not a system that can be worked

8      out between the AUSA and the representative at BOP?

9                  And if Ms. Papapetru is the representative, I am

10     telling you you will not be believed by anybody in the court

11     if this is how this continues to happen.

12                 MR. MODAFERRI:  Your Honor, one last point about

13     the medical order and then just a final point.

14                 The problem that we had here was the issue of just,

15     in fact, complying with the order because the MDC doctors

16     were not, in fact, caring for Ms. Sternquist anymore.  I

17     think that's evident.

18                 Putting aside the other issues that the MDC has had

19     with medical treatment, I don't think now is the time or the

20     place.

21                 But with respect to these issues that do come up

22     and these weekend orders and these ex parte requests for

23     orders that the Government has no prior notice of or the BOP

24     has not had --

25                 THE COURT:  But let's take the other side of that.

1    I mean, the Government asked twice for a stay.  Once in this

2    case, once in I forget what the other case was, this weekend

3    where I was asked to stay Judge Kuo's order which was about

4    medical care.  Mr. Palacio you were the U.S. Attorney.  I had

5    no involvement in that other case, but that was made ex parte

6    as well.  So the Government is doing the same thing.

7              I can't blame Ms. Glashausser that she's coming to

8    the Court to ask that a medical order be enforced when she

9    sees her client is, you know, in a bad physical state.

10             MR. MODAFERRI:  Understood.  The point I was just

11   trying to make, Your Honor, and I had this conversation with

12   Ms. Von Dornum, yesterday, is when these issues arise, come

13   to us first because we can probably resolve them.

14             THE COURT:  Who's the us, the civil division or Mr.

15   Buford and Mr. Palacio?  Because Mr. Palacio I believe was in

16   court with Judge Kuo until 7:30 on Friday night.  He then

17   asked me at 5 o'clock on Saturday to stay an order that he

18   had jut gotten regarding whatever that case was, not Ms.

19   Sternquist.

20             I'm sorry, Ms. Sternquist, this is all coming out

21   on your time.

22             But who is that, you know, who is it that we should

23   come to?  Who is it that Ms. Glashausser should come to?

24             MR. MODAFERRI:  Well, I offered at least that Ms.

25   Von Dornum can come to me.  But I'm not involved in every

1    criminal matter, so it should be the Mr. Bufords and Mr.

2    Palacios of our office.  And then we can try to resolve the

3    issue.

4              A situation like this order though would never be

5    resolved because it was just impossible to comply with the

6    Court's order because we weren't providing -- or the MDC

7    wasn't providing care any longer which is why we were going

8    to come here today to try to explain it to Your Honor.

9              THE COURT:  Well, luckily it got resolved.

10             MR. MODAFERRI:  Yes.

11             THE COURT:  And I do think getting the BOP out of

12   the middle is part of how it gets resolved.

13             As Ms. Glashausser is saying now that she's in

14   Marshal custody, they'll comply with access to the client.  I

15   don't know why that couldn't have been complied with when she

16   was in BOP custody, but that's for you to figure out going

17   forward, Mr. Modaferri.

18             MR. MODAFERRI:  Thank you, Your Honor.

19             THE COURT:  Okay.  I've given you the time because

20   I see that your client has come in good faith to answer.  And

21   if she did have something she wanted to put on the record, I

22   want to give her that opportunity.

23             MR. BUFORD:  I think we're content to have Mr.

24   Modaferri speak for us on this issue, Your Honor.

25             THE COURT:  Okay.

1          MR. BUFORD:  And I would just add I think the

2     point's been made.  What I think Mr. Modaferri was saying in

3     this particular instance, we, meaning Mr. Palacio and I,

4     didn't know that there was an issue getting these three

5     medications until the request hit the docket.  The order was

6     granted shortly thereafter.  And at that point we had until

7     kind of the next day to provide the medications.

8          So when we encountered the sort of logistical

9     issues or the questions about whether we could bring

10    medication to another facility and so forth to avoid a

11    situation where we would have Judge Bulsara finding that his

12    order was ignored, we put in a request for a stay and tried

13    to update the Court with our efforts to comply, that was how

14    we tried to proceed in good faith.

15          And so I think the point was if Mr. Palacio and I

16    had known prior to the filing of the order that there was an

17    issue with these medications we might have been able to

18    address it without having to ask for a stay and sort of

19    providing serial updates to the Court.

20          So, again, we will try to be better going forward

21    on these issues.  And I think it's useful to know that Mr.

22    Modaferri is in dialog with Ms. Von Dornum so that it's not

23    just on a case-by-case basis, but hopefully on a larger scale

24    basis that this is being addressed.

25          MR. MODAFERRI:  And just one additional point, Your

1    Honor.  I don't want to belabor this conference.  But Ms.

2    Papapetru has offered, when Your Honor has asked, you know,

3    what's the procedure moving forward when these issues come

4    up, and she said they can reach out directly to me.

5             So I think, you know, and Ms. Glashausser can

6    probably attest to this --

7             THE COURT:  They could reach out directly to Ms.

8    Papapetru?

9             MR. MODAFERRI:  So long as, you know, an AUSA is

10   copied, I think that the Federal Defenders already do this,

11   and reach out to MDC legal.

12            THE COURT:  Yes.  I don't think that they've gotten

13   the result that they need and that's what the problem is.

14   She's only one person.  She's willing to put her credibility

15   out there to say that she'll do everything, you know, when

16   they contact her directly, but that hasn't happened.

17            Ms. Glashausser?

18            MS. GLASHAUSSER:  That's right, Your Honor.

19            And I just -- I haven't asked for any ex parte.

20   There's been no ex parte communication with any of the many

21   judges involved in this case.  All of it has been filed on

22   the docket with portions under seal.  Everything is always

23   sent to the Government.  And I think in each letter I filed

24   it's clear that that was not the first -- my first step was

25   not to go to the Court.  My first step was to reach out to

1    Ms. Papapetru to do -- repeatedly to reach out to all of the

2    MDC legal team.

3          If the prosecutors would like me to CC them on

4    every communication, I will.  I have now been doing that.

5    I'm not sure if they're happy about that or not.  Because

6    frequently we receive no response from the MDC legal team

7    which is why then I write to the court, especially when it's

8    something like a medical issue which is obviously time

9    sensitive.

10         THE COURT:  And, Mr. Buford, I just want to add

11    that we have -- when somebody is making their initial

12    appearance in the arraignment part -- a memo that's sent to

13    MDC when somebody has a medical issue or they're on

14    medication.  And of course we're not doctors, so we're just

15    saying see this person and evaluate them.

16         For at least a month and a half we got no responses

17    from the Government.  A Michael Cardeau had a response that

18    said I'm not able to respond.  We had no response for a month

19    and a half to the Court's medical memos.

20         So clearly the judges that are dealing with

21    pretrial matters have heard that just bring it to Ms.

22    Papapetru and she'll get somebody to pay attention to it.

23    It's not working for us.

24         So, again, if you want your word to be taken as

25    true in this court you're going to have to do something to

1    get back on the right foot here.

2           And I'm saying that on the record, Ms. Papapetru.

3    I know it's painful to hear because you're probably doing

4    your very best to get the people the care that they need.  I

5    don't envy your situation.

6           But I'm also here to say that when AUSAs stand up

7    before the Court, credibility is everything.  And if you want

8    us to believe you, you better do more than just put a call

9    in.  Because, again, it's gotten to the point where we are

10   all afraid of the medical care that people are being given at

11   MDC.  That's just one issue on the plate.

12          But that I can say that, you know, again, we're the

13   ones that are responsible for making bail determinations.

14   And you could see in Judge Komitee's order that he held Ms.

15   Sternquist, but he said that that issue was a matter of

16   concern for him as well.

17          MR. BUFORD:  I too, like Mr. Modaferri, Your Honor,

18   don't want to -- I hesitate to draw any specific conclusions

19   from the record as we understand it, but I think what I said

20   at the hearing without the benefit of the transcript is that

21   it's clear that Ms. Sternquist was seen by a doctor at the

22   MDC.  There was an effort to replace the catheters as I

23   understand it that I think triggered the hospitalization at

24   some point.

25          And, again, I hesitate to draw any sort of

1    overarching conclusions about her underlying causes or why it

2    happened, but --

3                THE COURT:  I understand, Mr. Buford.  But, you

4    know, again, it's not a one-time occurrence that we're having

5    these issues and difficulties.

6                And so, again, I'm not underestimating how hard a

7    job Ms. Papapetru has or how much time Mr. Modaferri and Mr.

8    Palacio and you spent trying to get this to work, but that's

9    not my bottom line here.  My bottom line is we've had these

10   problems at MDC.  They continue.  People's lives are at stake

11   and we have to take it seriously.

12               MR. BUFORD:  Understood, Your Honor.

13               MR. MODAFERRI:  Your Honor, one final point, if

14   you'll allow?

15               THE COURT:  Sure.

16               MR. MODAFERRI:  And I don't think this is going to,

17   you know, swing the pendulum back in the other direction, but

18   what I can say is that when I return to my office, you

19   mentioned the new warden, I will reach out to the new warden

20   personally, I'll (indiscernible) Ms. Papapetru, and explain

21   Your Honor's concerns so at least the issue of medical

22   treatment at the MDC is made known to the top and I think

23   that that is probably a good place to start and we can go

24   from there.

25               THE COURT:  Thank you.

1          Yes, Mr. Buford?

2          MR. BUFORD:  I'm sorry, Your Honor, I have one

3     other issue that I apologize it didn't occur to me before the

4     hearing, but having proceeded with the arraignment, I believe

5     that Judge Irizarry's practice is to set an initial

6     conference based on when the arraignment takes place.

7          THE COURT:  Yes.

8          MR. BUFORD:  So obviously we hadn't scheduled it

9     yet.  I would just ask, I apologize for doing this on the

10    record, but whether counsel and her client would consider,

11    now that the arraignment has occurred, an ordered excludable

12    delay --

13         THE COURT:  I would ask her.

14         I would ask if Ms. Glashausser wants to step out

15    and speak about speedy trial.  I'd stay on the record.  We

16    don't know when the next occurrence will be, but if you could

17    talk to your client about whether or not she would agree,

18    then we could at least get a couple of weeks of exclusion.

19         MR. BUFORD:  I think that's right, Your Honor.  I

20    think whether there's an agreement or not will affect when

21    the conference is scheduled.

22         MS. GLASHAUSSER:  Just so I'm clear on the request,

23    is it for a particular day?  What are we --

24         MR. BUFORD:  What I would ask for is a request for

25    an OED of --

26

1           THE COURT:  Today is the 19th.  So looking --

2           MR. BUFORD:  In an abundance of caution -- I'm

3    sorry.

4           THE COURT:  -- looking at the schedule, why don't

5    we say until November 2nd, which is three weeks away, and

6    that way Mr. Buford could try to arrange for a conference and

7    hopefully Ms. Sternquist will be able to attend in person.

8           But I'll ask you to step out to speak to her off

9    the record to see if you can agree to that.  And likewise

10   this is out of the norm because usually I would have you

11   contact Judge Irizarry's deputy.  But in light of the fact

12   that I did this without scheduling it to save everybody, I'd

13   ask Ms. Glashausser to step out an speak to Ms. Sternquist

14   off the record and we'll put this on hold.

15          MS. GLASHAUSSER:  Thank you, Your Honor.

16          THE COURT:  Thank you.

17          MR. BUFORD:  Thank you, Judge.

18      (Pause)

19          THE COURT:  Do you want to step out so you could

20   talk about this without being overheard.

21          MS. PAPAPETRU:  Sorry, Your Honor.

22          THE COURT:  It's okay.  You could step out with Ms.

23   Glashausser.

24          MS. PAPAPETRU:  There was just one other matter we

25   had planned to take up  --

1          THE COURT:  If you want to step out with her, you

2     can.

3          MR. BUFORD:  I think we know where we stand.

4          THE COURT:  Okay.

5     (Pause)

6          THE COURT:  So, Ms. Papapetru, I know nothing about

7     you.  You're a lawyer, right?

8          MS. PAPAPETRU:  Correct.

9          THE COURT:  Where did you go to law school?

10         MS. PAPAPETRU:  Hofstra.

11         THE COURT:  And when did you graduate?

12         MS. PAPAPETRU:  2018.

13         THE COURT:  And how did you end up with this plum

14    job?

15         MS. PAPAPETRU:  I applied for it.  I was originally

16    in the DA's Office in Staten Island prior to.  I've been with

17    MDC Brooklyn for a little over two years now.

18         THE COURT:  So I don't mean to embarrass my law

19    clerk, but he said that you look way too hip to be sitting

20    with the Government lawyers.

21         MR. BUFORD:  None taken.

22         THE COURT:  I said DA's are very different than MDC

23    I venture.

24         MR. BUFORD:  She tried to stay in the background

25    and we asked her to come up.

1            THE COURT:  Well, I did require you to bring

2    somebody from BOP, so they had no choice.

3            MR. BUFORD:  It was less about appearing before

4    Your Honor and more about being in proximity to us I think.

5            THE COURT:  Oh, yeah, yeah.  It's okay.

6            After a full day of civil cases, it's always nice

7    to have something that's a little different.

8            Mr. Modaferri, I had a case today -- I know we're

9    still on the record -- it was brought by DC DOJ because it's

10   a tax lien on people's house because the husband didn't pay

11   his taxes for like 25 years and lied to his wife.

12           MR. MODAFERRI:  Wow.

13           THE COURT:  Now, if that doesn't lead to a murder,

14   right, okay, sorry.

15           We were just talking about cases that I had on

16   today that have nothing to do with Ms. Sternquist.

17           MS. GLASHAUSSER:  Okay.  Ms. Sternquist will waive

18   the speedy trial time.

19           THE COURT:  So I'm going to have to put it on the

20   record.

21           MS. GLASHAUSSER:  Yes.

22           THE COURT:  And I'm sorry that I was just making

23   conversation in the middle of Ms. Sternquist speaking to Ms.

24   Glashausser.

25           Are you back on, Ms. Sternquist?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Okay.  Very good.

3              So, Ms. Sternquist, the Government has asked that

4        the Court exclude the speedy trial time between today,

5        October 19th, and November 2nd, which is two weeks away.

6              MR. BUFORD:  Okay.

7              THE COURT:  And they intend to exchange discovery

8        and talk about how the case could be resolved short of trial.

9              Is that correct, Mr. Buford?

10             MR. BUFORD:  It is, Your Honor.

11             THE COURT:  And they also intend to contact Judge

12       Irizarry and get a date scheduled.  And we're hoping by that

13       date, Ms. Sternquist, that you'll be well enough to appear.

14             So I have taken this application and asked Ms.

15       Glashausser to go out and speak with you about whether you

16       would agree to exclude the time and she's come back and said

17       that she has spoken to you.

18             So I am obligated to make sure that you understand

19       the Government has 70 days from the date that you're

20       arraigned on the indictment, which is what we did when we

21       took your not guilty plea earlier in this proceeding, and

22       they have to commence the trial against you within 70 days.

23             If they do not commence the trial within 70 days,

24       your attorney can ask that the charges against you be

25       dismissed as a violation of your right to a speedy trial.

1          As I said, the Government has asked and I've been

2     told that you agree that they will stop the speedy trial

3     clock today and not start the clock to count that 70 day

4     period until November 2nd.

5          Do you understand the request and its consequences,

6     Ms. Sternquist?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And have you discussed this matter with

9     your attorney?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  And do you have any questions for the

12    Court regarding the application or its consequences?

13         THE DEFENDANT:  I do not, Your Honor.

14         THE COURT:  And, Ms. Glashausser, have you

15    discussed this matter with your client?

16         MS. GLASHAUSSER:  Yes, Your Honor.

17         THE COURT:  And you believe she understands this

18    request and its consequences?

19         MS. GLASHAUSSER:  Yes, Your Honor.

20         THE COURT:  So I find that the interests of the

21    Government and the defendant and the public in a speedy trial

22    are outweighed by the parties' interest in having this time

23    to discuss a possible resolution of the case without a trial

24    and contact Judge Irizarry to get a date when hopefully Ms.

25    Sternquist will be well enough to come before Judge Irizarry

1    for a conference.

2                   So I exclude the time between today and November

3    2nd from the speedy trial deadline.

4                   This will all be put into writing.

5                   Is there anything else that needs to be addressed

6    on behalf of the Government today?

7                   MR. BUFORD:  Not from the Government, Your Honor.

8                   THE COURT:  Anything else, Ms. Glashausser?

9                   MS. GLASHAUSSER:  There's one other matter, Your

10   Honor, that I'd like to put on the record.

11                  Ms. Sternquist's name at the BOP is her old name.

12   It is Michael Sternquist.  I have asked the Government and

13   Ms. Papapetru how best to change it to her correct name, Kara

14   Sternquist.  They have represented to me that they will let

15   me know whether a court order is needed by -- we had

16   discussed by the arraignment which now we have done, but we

17   had anticipated --

18                  THE COURT:  Except that on the indictment it does

19   list Kara Sternquist with the two Cara Sandiego and Kara

20   Withersea, so it doesn't list the old name.

21                  So has it been taken care of, Mr. Buford?

22                  MR. BUFORD:  I understand that she's still listed

23   in the BOP register as her old name.

24                  THE COURT:  And how do we go about getting that

25   changed?

1          MR. BUFORD:  So my understanding is that it depends

2     I think, Your Honor.  I think if there is proof of

3     identification change, they'll accept that.  If it's a

4     question of a misspelling, which I think there may be as well

5     in addition to the false, not the false, the old name, that's

6     something that may be more easy to correct.

7          THE COURT:  Yes.

8          MS. GLASHAUSSER:  So the Government has Ms.

9     Sternquist's identification.  I believe so.  I do think it

10    would be difficult for us to come up with a proof of

11    identification, which is why I had anticipated requesting a

12    court order, but I guess the Government will let --

13         THE COURT:  Can I direct that Mr. Buford and Ms.

14    Glashausser try to solve this.  I certainly don't have the

15    identification and I can't just order the Government to

16    change it without knowing what the identification -- I assume

17    what you're saying is she has legally changed her name?

18         MS. GLASHAUSSER:  Yes, Your Honor.  And that I

19    believe is why the Government charged her in her legal name

20    which is what the Government generally does.

21         And I understand that the Government is going to

22    look into whether we can resolve this without a court order

23    or whether a court order is needed, but I just wanted to put

24    that n the record because we had discussed doing it at the

25    arraignment.  And since that happened today, that date won't

1       (indiscernible) --

2               THE COURT:  So this is what I will say.  I've just

3       given you an exclusion of time until the 2nd.  That's more

4       than enough time to get this resolved, with Ms. Glashausser

5       being put on notice.  If you need to make an application to

6       the Court, you'll make it to Judge Bulsara or Judge Irizarry.

7       Okay?  They're now the judges assigned to the case.

8               The arraignment on the indictment and the exclusion

9       of time was done today because you were coming back before me

10      for everyone's convenience.  But that's more than enough time

11      to solve this.

12              And I do note for the record that all of the court

13      documents are in Kara Sternquist's name.  None of the court

14      documents are in the prior name so we should be able to get

15      the BOP to conform.  If the Government is thinking this is

16      Kara Sternquist, then the BOP should be able to get that

17      resolved.

18              MR. BUFORD:  And at the risk of opening ourselves

19      up to an issue, Your Honor, we certainly charged on the basis

20      of the name that was being used.  One of the issues in the

21      case is false identification.

22              THE COURT:  I get that and that's why I can't order

23      anything today because I have nothing more than what's on the

24      docket.

25              So I am taking Ms. Glashausser's word that this is

34

1    her legal name and I am directing that the Government look

2    into the matter and get this resolved by the 2nd of November.

3    And you're not writing back to me and you're not asking for a

4    stay, you're just getting it resolved.  Okay?

5              MR. BUFORD:  Understood, Your Honor.

6              THE COURT:  Okay.  Anything else on behalf of the

7    Government today?

8              MR. BUFORD:  Not today, Your Honor.  Thank you.

9              THE COURT:  Anything further on behalf of Ms.

10   Sternquist?

11             MS. GLASHAUSSER:  No, Your Honor.  Thank you.

12             THE COURT:  Ms. Sternquist, I wish you good health.

13   I hope you get better.

14             And with that, we're adjourned.  Thank you.

15             THE DEFENDANT:  Thank you.

16             MR. MODAFERRI:  Thank you, Your Honor.

17        (Proceedings adjourned at 5:19 p.m.)

18

19

20

21

22

23

24

1

2          I, CHRISTINE FIORE, Certified Electronic Court Reporter

3     and Transcriber, certify that the foregoing is a correct

4     transcript from the official electronic sound recording of

5     the proceedings in the above-entitled matter.

6

7

8     _____          October 26, 2022

9          Christine Fiore, CERT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25