# Federal Defenders
## O F   N E W   Y O R K ,   I N C.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

May 5, 2023

Judge Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Kara Sternquist*, 22-cr-473

Dear Judge Irizarry:

I am writing to request the Court's assistance related to Ms. Sternquist's conditions of confinement. Ms. Sternquist has been incarcerated at a nursing home since November, about 5 to 6 months. Both of her legs are shackled to the bed, even though she needs a wheelchair to move around. Two guards are in her modestly-sized room with her at all times. These two guards can see and hear her at all times. The facility also has monitored video surveillance of all common areas. Despite these intense security protocols, since January, Ms. Sternquist has been denied all social visitors. This week, she was informed she would only be able to eat with spoons. She has also been prohibited from receiving any make-up, including lipstick, even though lipstick and other make-up is permitted at MDC, and is particularly important to Ms. Sternquist's gender expression.

The defense has been attempting to work collaboratively with the U.S. Marshal in charge of her conditions of confinement, with the assistance of the government, but has been unable to reach an agreed-upon resolution on the below matters.

**Factual Background**

### After initially approving visitors, visiting was suspended in January

When Ms. Sternquist was initially incarcerated at the nursing home facility, in the fall and winter of 2022, she was permitted to have social visitors who were pre-

1

approved by the government and the U.S. Marshals. There were never any security incidents, disciplinary incidents, or any type of incidents related to these visits.

Additionally, after discussion with the U.S. Marshals about the shackles causing abrasions on her legs, she was permitted to have just one leg shackled, so that she could allow one leg to heal and switch legs periodically. There were never any incidents related to this shackling procedure.

Her conditions changed, however, on January 31, when the guards found a ripped soda or juice can in her room. These type of cans were provided with meals. Ms. Sternquist told the guards that she had ripped up the can and planned to throw it out. After this, visits were "suspend[ed]" (marshal email 1-31-23). Ms. Sternquist was also re-shackled on both legs.

About 6 weeks later, on March 15, counsel asked when visits would be resumed, and was told "Social visits will not be resumed." (email 3-20-23). The defense has been provided no timeline related to how long this punishment will continue.

<u>Ms. Sternquist's grandmother's death and a new rule that she cannot have forks.</u>

Last weekend, Ms. Sternquist's grandmother died. Ms. Sternquist calls her grandmother her mother because she raised Ms. Sternquist starting from when she was a little kid. (Ms. Sternquist's actual mother abandoned her; she has been absent and presumed dead since Ms. Sternquist was little). Thus, Ms. Sternquist has always called her grandmother her mother because she effectively was her mother. With the assistance of advocacy from the government, the marshals ultimately allowed Ms. Sternquist to have a visit from Gia Pace to tell her this devastating news, a kindness for which she and we are extremely appreciative.

However, in discussions with the marshals about whether this visit would be permitted, the marshals said that the guards had found plastic cutlery in her room. Specifically they sent a blurry picture to defense counsel of a plastic fork, part of a plastic knife, and what appeared to be two plastic handles from the plastic cutlery (email 5-1-23). This photo is copied here:



Until this week, Ms. Sternquist had been given plastic cutlery – forks, spoons, and knives – to eat with. Since Monday, however, she has only been provided spoons.

In a series of emails to the marshal and the government, the marshal asserted that people "can eat any meal just as good with a spoon as [ ] with a fork" (email 5-4-23). He added that, "Until your client demonstrates a change in behavior as outlined when given utensils to eat, your client will be issued only a spoon." I have received no response about what Ms. Sternquist could do to demonstrate that she will only use utensils to eat.

**Argument**

**The Court should order that Ms. Sternquist be permitted to have visits, forks, and lipstick – all of which she would have if she were at MDC**

    1. <u>Ms. Sternquist should be permitted to have visitors</u>

Ms. Sternquist is allowed just two 15-minute calls per-day to her loved ones.[1] The only non-legal visit she has had since January was this week, when she learned about her grandmother's death. As she is shackled to the bed by herself, the only human interaction she has on a day-to-day basis is with the guards (who are always in her room), nursing home staff who drop off her food, and, more rarely, with medical staff. (She also has negative interactions with a person in the adjourning room with whom she shares a bathroom; that person makes harassing comments to her while she is in the bathroom). The nursing home itself is a disorienting place, even to visit. Any time counsel has visited, there is extremely loud pop-elevator music playing. That noise is layered on top of the sound coming from a TV controlled by the guards, the yells and cries of the elderly nursing home residents, and the alarm beeps from various medical alerts. Even for counsel visits, the guards maintain visual contact with Ms. Sternquist, thus it is never possible to block out the cacophony or not be watched.

---

[1] Especially in the absence of visits, longer calls would also allow Ms. Sternquist to have some lifeline to her loved ones. Despite asking, I have received no answer why longer calls are not allowed.

Ms. Sternquist's social visits were crucial to maintaining her mental health in this environment. Unlike people at MDC, she has no fellow-incarcerated individuals to interact with. She cannot have a conversation with anyone in-person on a daily basis – there is no one to talk to, laugh with, blow off steam with. She also cannot move around or ever leave her room and bed, except for her limited physical therapy or to go to the bathroom. Social visits were essential to her staying positive and upbeat. They are especially critical right now, in the wake of her grandmother's death.

The defense, however, understood that the marshals took seriously the presence of the ripped can and did not initially challenge the two resulting punishments: 1. The reshackling of both legs, and 2. Suspending visits. However, now, it has been over three months and the defense has been unable to get any timeline on when the visits will resume. Other incarcerated individuals are permitted social visits; if they are suspended, the person is told when they will be reinstated. In our experience, suspensions are graduated, seemingly starting with 15 days and going up to 90 days. Ms. Sternquist too deserves this same consideration. This is particularly true as there had been no security concerns related to the visits at all. There was never any incident (including during the condolence visit this week) related to Ms. Sternquist's visits.

It is time for the Court to step in and allow Ms. Sternquist to have visitors. Alternatively, the Court should set a time-line for when this punishment will be lifted.

2.  Ms. Sternquist should be permitted to have plastic cutlery.

Requiring Ms. Sternquist to eat all food – meat, spaghetti, salad, everything – with a spoon is dehumanizing and unnecessary. The cutlery provided to Ms. Sternquist is flimsy plastic, surely chosen because it can do no harm. Despite numerous emails and a call with the marshal on this issue, the defense is unsure when or how this condition against forks and knives will be lifted. It is a daily difficulty and should be changed immediately.[2] This is especially true as the plastic spoons have the same handle as the plastic knives and forks. Thus the limitation to spoons does

---

[2] The same day, Ms. Sternquist's pens and pencils were taken away. Ms. Sternquist used these items to write, including to write notes to counsel, and to draw. When asked if our paralegal could give Ms. Sternquist a pen during a visit on 5/3/23, the marshal stated that pens and pencils will be provided again next week.

nothing to address whatever concern the marshal has with the plastic cutlery and only serves to make Ms. Sternquist unable to eat like an adult human being.

3. <u>Ms. Sternquist should be allowed to have lipstick and other makeup items similar to those on the MDC commissary list</u>

The marshals originally told counsel that we could provide Ms. Sternquist travel-size toiletry items. However, when counsel attempted to provide her lipstick and related makeup items, the marshal said no because makeup was not "available in [MDC] commissary for quite many years." (email 1-23-23). In response, counsel provided the marshals a recent MDC commissary list noting that makeup, including lipstick, is permitted at MDC. After learning that the MDC would allow makeup, the marshal provided a different reason why makeup wasn't allowed, saying that Ms. Sternquist wearing makeup was a "security issue." (call 2-6-23). In a follow-up email, he stated that "[t]he MDC often have varied opinions when it comes to a variety of matters, and although we do give consideration to the MDC on specified matters from time to time, regarding this specific matter [of lipstick], the MDC's input could only add to but doesn't change the USMS decision." (email 2-15-23).

There is no possible security risk related to Ms. Sternquist having makeup and she should be permitted to have it, just as people in a similar position at MDC would have. Ms. Sternquist's identity as a woman is essential to her identity as a person. Make-up helps affirm her identity, makes her feel more like herself (and like a human being), and could also assist in improving her mental health. Additionally, as recently as April 6, at least two guards were continuing to call her "Michael" and using male pronouns. Having some basic women's make-up products could help ameliorate this ongoing problem.

The marshals have set up procedures over time for Ms. Sternquist to get underwear, glasses, and books through counsel. The marshals or guards (or both) verify that the items are safe and accept them. This same procedure should be used for makeup. [3]

---

[3] Additionally, Ms. Sternquist used teeth aligners when she was in the community, which were sent in the mail directly from the company, Invisalign. The marshal said she could only receive these if "MDC will provide it." No security concern was noted. Thus, Ms. Sternquist should also be permitted to receive teeth aligners.

Thank you for your consideration of these requests. The government's position is that they defer to the marshals on these matters.

Sincerely,

_____/s/_____
Allegra Glashausser
Assistant Federal Defender