# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

**David Patton**
*Executive Director and Attorney-in-Chief*

**Deirdre D. von Dornum**
*Attorney-in-Charge*

June 5, 2023

Judge Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Kara Sternquist*, 22-cr-473

Dear Judge Irizarry:

  I am writing to respectfully request that Kara Sternquist be released on a temporary bond to attend the memorial service for her mother on June 24 in Lake Wales, Florida. The service is at the Lake Ashton retirement community, where her mother had lived and where her father, who suffers from Alzheimer's disease, still lives. It is scheduled to be from 2:00 to 4:00. We propose that Giacinta Pace serve as a third-party custodian, and physically accompany Ms. Sternquist at all times during the trip. The trip would all be completed in one day; Ms. Sternquist and Ms. Pace would fly to Florida in the morning of June 24 and return in the evening of June 24. We further propose that Ms. Sternquist be on GPS monitoring and that she be limited to traveling to the airport and to Lake Wales and back again. Ms. Pace is also ready to sign a bond, as is Hannan Simpson. Both people have already spoken to pretrial and were approved as sureties by Judge Reyes.[1]

  It is vitally important to Ms. Sternquist to have this chance to pay her respects at the memorial service. This is especially true as her mother has been cremated and her ashes will be scattered after the service; there will be no grave to visit later. The service will be her only chance for closure.

---

[1] Additionally, as noted in the previous bail application, Dkt. 51, additional sureties are available if the Court deems them necessary.

Ms. Sternquist's mother was her best friend for much of her life. Their bond was unique, and in ways more special than the average mother-child bond: Ms. Sternquist's mother was also her grandmother. This is because Ms. Sternquist's grandmother adopted her and raised her from when she was a little kid after Ms. Sternquist's birth mother abandoned her. (Her birth mother has been absent and presumed dead since Ms. Sternquist was a young child. Thus, Ms. Sternquist's grandmother was her mother).

When Ms. Sternquist transitioned, however, it was challenging to their relationship, and, at the time of Ms. Sternquist's arrest, the pair were still working through their complicated emotions. This was made more difficult as Ms. Sternquist and her mother had difficulty communicating during Ms. Sternquist's incarceration; because her mother was sick for many months before her death – in and out of the hospital – it was quite hard for Ms. Sternquist to reach her on the phone from the nursing home. Ms. Sternquist's mother never stopped loving and supporting her, including during this case; she was in regular contact with Ms. Pace and had spoken with Ms. Sternquist's legal team as well. However, Ms. Sternquist longed to see her mother again to fully resolve these matters and reaffirm their mother-daughter bond. Having the time to remember her, celebrate her, and mourn her at her memorial service is essential to Ms. Sternquist's future well-being.

Recognizing the importance of grieving a loved one after their death, judges in this district have allowed this type of temporary release for funerals of close family members. *E.g. United States v. Chris Bantis*, 21-cr-483 (TAM) (E.D.N.Y.; Nov. 5, 2021) (sealed docket entry; granting temporary release for 30 hours, with GPS monitoring and a third party custodian); *United States v. Anthony Hennis,* 21-cr-354 (RER) (E.D.N.Y. Aug. 5, 2021) (granting temporary release for person charged with being a felon in possession of ammunition); *United States v. Hakeem Johnson*, 22-cr-236, Dkt 45 (RER) (E.D.N.Y. April 14, 2023) (granting temporary release for funeral for person charged with being a felon in possession of a gun, over government objection); *United States v. Elijah Wells*, 19-cr-193, Dkt. 18 (WFK) (E.D.N.Y.; June 17, 2019) (granting temporary release for funeral for person charged with being a felon in possession of a gun); *United States v. Shelton Willis*, 06-cr-608, Dkt. 492 (KAM) (E.D.N.Y.; Sept. 29, 2017) (same; person convicted of three counts of robbery and 924(c)).

There is also no risk of danger or flight in granting this brief, limited temporary release. Ms. Sternquist remains unable to walk; she can stand only briefly without

assistance. She has no history of violence. She would be with Ms. Pace at all times. And the sole purpose of this trip would be to grieve her mother.

The risks the Court previously found when denying bail are significantly lessened due to the temporary nature of this request. Additionally, since the previous bail application requesting full release, any broader risk of flight or danger has also lessened. The guideline estimate has decreased; the government's current offer indicates a range of 46 to 57 months. The defense has filed a motion to dismiss the top count on constitutional grounds, which Ms. Sternquist is eager to have heard. And, no new evidence has emerged: as before, there is no indication Ms. Sternquist had any intent to use any of the guns or gun parts she is alleged to have possessed. On the contrary, no ammunition was found anywhere in the jam-packed apartment where the charged gun was found. And the apartment itself suggests that the residents were collectors who may have veered into hoarding. In addition to the items highlighted by the government, there were also large quantities of all manner of items, including foods, clothes, and keychains. In this context, that there were many miscellaneous gun parts, in addition to the fully-assembled guns,[2] is not indicative of an intent to harm, but of an avid collector. The lack of ammunition underscores this point.

The government and pretrial oppose this request. If this request is granted, we propose that Ms. Sternquist be produced to court on June 23 so that she may be fitted for an ankle monitor, and that the Court order that she be released to Ms. Pace from the nursing home in the morning of June 24, and ordered to return directly to the nursing home in the evening of June 24. Alternatively, we request that the Court hold a hearing on this application.

Sincerely,

/s/
Allegra Glashausser
Assistant Federal Defender

---

[2] Additionally, in the discovery provided by the government, ATF reports indicate that – before experienced ATF agents fixed and replaced parts – only one gun found was capable of firing more than one shot. One became jammed immediately; and two did not work until ATF took them apart and reassembled them with replacement parts. Sternquist 06204 (noting that "after the first round was fired, the Exhibit was completely locked up and the spent cartridge casing could not be removed easily"); Sternquist 06200 (describing "perform[ing] a detailed disassembly"); Sternquist 06201 (item was "crudely made" and of "very low quality in both materials used and craftsmanship applied").

3