# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

June 14, 2023

Judge Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Kara Sternquist*, 22-cr-473

Dear Judge Irizarry:

I am writing in brief response to the government's letter opposing Ms. Sternquist's request to be permitted to attend her mother's funeral, filed June 12, 2023. The government's letter appears not to appreciate both that the request made here is extremely limited and that the request is made for a specific purpose, a purpose which dramatically reduces any risks of flight or danger. Ms. Sternquist is in mourning. Going to one's mother's memorial service is an exceedingly unlikely time to flee. It is surely in part because of the limited risks involved when releasing someone for this purpose, that courts in this district often allow temporary release for funerals in cases where the same courts had already denied bond. This Court should reject the government's speculative concerns, which overstate the evidence in the underlying case, and which, in any event, can be addressed through the strict bond conditions proposed. There is simply no non-speculative evidence here that Ms. Sternquist would flee. It is the government's burden to show that Ms. Sternquist should not be released for this one day. They have not met it.

A. <u>The government raises no non-speculative risk of flight</u>.

First, the Court should reject the government's assertion that there is an unacceptable risk that Ms. Sternquist will "use a phony identity to board a flight

1

bound for an unapproved destination." In support, the government asserts that Ms. Sternquist had "'blank' foreign passports for multiple countries that contained no biological information" at the time of her arrest. Gov. Let. 2, n. 2. The government does not point to any particular piece of evidence in support of this assertion, which appears to be an exaggeration of the evidence. The "blank foreign passports" that the government seized did not appear at all real, nor were they designed to appear real. Instead, they looked like novelties, like flimsy notebooks, some clearly designed for children, with lined-paper, drawing paper, or cartoon-designed paper inside: [1]

For example, a picture of the cover of a "blank" "passport" next to a similar item opened to show the lined paper inside:



Another with blank paper inside:



[1] Pictures taken at USPS Inspector's office evidence review, February 2, 2023.

And one clearly designed for children, with cartoon designs:



These novelty "blank foreign passports" offer no evidence of any risk of flight.[2] There is also no evidence that Ms. Sternquist ever even attempted to use any counterfeit document to board an airplane or any non-speculative evidence that she ever would have been able to do so.

This argument also ignores the reality of Ms. Sternquist's current situation. She has been incarcerated for about 10 months and is shackled at all times, either to a bed, a wheelchair, or from leg to leg. She has absolutely no ability to make a "phony identity" for herself, and the government has never pointed to any evidence that someone else close to Ms. Sternquist has ever made her a phony identity or has the ability to do so.

---

[2] This is not the first time the government misstated or exaggerated the evidence to argue against bond. For example, in the bond hearing before the magistrate court, the government stated that Ms. Sternquist had a New York driver's license "in her possession" when she was arrested, "for which there is no corresponding legitimate [ ] ID." Dkt. 29, Transcript September 29, 2022, p. 9. This was wrong. Ms. Sternquist's New York driver's license is and always was real. *See generally* Transcript Nov. 3, 2022 (discussing that Ms. Sternquist's driver's license lists her correctly as female).

The government, thus, points to no legitimate risk that Ms. Sternquist currently has access to any "counterfeit" documents.

Second, the government asserts that Ms. Sternquist "may try to remain in Florida, using a fraudulent identity to conceal her whereabouts or to secure alternative means of transportation (like a rented car) to evade detection by law enforcement." This too is complete speculation. Ms. Sternquist has no means or desire to remain in Florida. She needs medical attention; she cannot walk; she cannot drive an imagined escape rental car; she has no access to any driver's license; and she would be on GPS monitoring and with Ms. Pace at all times. She also has no desire to "try to remain in Florida." Her only contact in Florida is her father, who has Alzheimer's disease, and lives in the Lake Ashton retirement community. He needs help caring for himself; he would not be able to assist Ms. Sternquist in escaping and then assist her in the care she needs. This argument by the government is fanciful.

B.  <u>The government makes no specific arguments relating to any danger in this one-day release; there is none</u>.

The government raises no specific arguments about Ms. Sternquist being a risk of danger during this brief, temporary release. She would not be. This is particularly true due to her current immobility.[3] She also lacks strength; in addition to the lack of strength in her upper body due to her spinal injury, she has also been laying in a bed for about 23 hours a day for months on end, so has lost the muscle she had. It is hard to imagine any real risk of danger she poses.[4]

---

[3] In prior bond hearings, the government disputed Ms. Sternquist's limited mobility, implying that she had been "commuting" to Harlem on a "regular basis" as evidence of her mobility. *See* Dkt. 30, T. Sept. 29, 2022, at 13. Ms. Sternquist took cars to work during that time because of her limited mobility; she was working part-time at the Jewish Community Center on 76th Street, not Harlem. Her job was never evidence of her mobility.

Since then, of course, Ms. Sternquist's mobility has only worsened due to the medical crisis she suffered while incarcerated. She has made only limited progress while at the nursing home, as she has only limited physical therapy, in her room, and while shackled.

[4] The government notes that the nursing home found pieces of an aluminum can in her room. It does not assert, however, that this raises any risk of danger related to the present bond application. It does not.

C.     <u>Ms. Pace is an appropriate third-party custodian, approved by pretrial</u>.

The government next states that it has "concern" with Ms. Pace serving as a third-party custodian. Gov. Ltr. at 3. Pretrial, however, has raised no such concerns: pretrial conducted a criminal record check of Ms. Pace, finding nothing. They verified her address, spoke to her about her job, and about the duties of being a third-party custodian. Ms. Pace understands these duties well. She also understands that in being a third-party custodian and signing a bond, she is personally at risk of losing a great deal of money in the event that she does not discharge her duties successfully.

None of the government's speculative assertions about what Ms. Pace may have viewed a number of years ago are related to her ability to carry out the duties of a third-party custodian. The government just speculates that Ms. Pace may have "observe[d]" guns or gun parts or fraudulent badges "prior to" Ms. Sternquist's arrest. This speculation is also not relevant to her ability to carry out her duties as she would swear to do. Ms. Pace is undeniably an upstanding member of her community, with a demanding, but well-paying job, who rents a luxury apartment in Manhattan, and has no criminal history. She has been approved the U.S. Marshals and the government to visit Ms. Sternquist, and has done so without any incident. She was approved by Judge Reyes to act as a surety. She should be approved by Your Honor as an appropriate third-party custodian here.

D.    <u>The government does not rebut any of Ms. Sternquist's arguments relating to the current state of her case militating against any risk of flight</u>.

In her application, Ms. Sternquist also pointed to numerous circumstances lessening any risk of flight or danger, including that the guidelines range in the current plea offer is 46 to 57 months, the lack of any evidence showing she had any intent to use any gun, and the recently filed motion to dismiss the gun count. The government does not rebut or respond to these facts. Indeed, her legal argument in the motion to dismiss has only strengthened since the bail request was filed: last week, the Third Circuit, sitting *en banc* held that a person with a non-violent prior felony – just like Ms. Sternquist – retained the protections of the Second Amendment. *Range v. Att'y Gen,* No. 21-2835, 2023 WL 3833404, at *1 (3d Cir. June 6, 2023). The court reversed Mr. Range's conviction under 18 U.S.C. § 922(g)(1), finding that the statute was unconstitutional as applied to Mr. Range. *Id.* This legal development has only made Ms. Sternquist more eager to have her similar legal argument heard by this Court.

\*      \*      \*

Both the Bail Reform Act and compassion support allowing Ms. Sternquist to attend her mother's memorial service. I respectfully urge the Court to allow her to do so.

Sincerely,

_____/s/\_\_\_\_
Allegra Glashausser
Assistant Federal Defender

6