UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,       :

                            :      **MEMORANDUM AND ORDER**

       -against-          :           **(Amended)**

                            :        **22-cr-473(DLI)**

KARA STERNQUIST,            :

                            :

              Defendant.     :
------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On May 30, 2023, Kara Sternquist ("Defendant") moved to dismiss Count Three of the Indictment charging her with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 3551 *et. seq.* on the ground that § 922(g)(1), which prohibits individuals with prior felony convictions from possessing firearms, is unconstitutional under the Second Amendment both on its face and as applied to her. *See*, Def.'s Mot. ("Mot."), Dkt. Entry No. 74. The Government opposed. *See*, Gov't. Opp. ("Opp."), Dkt. Entry No. 82. Defendant replied. *See*, Def.'s Reply. ("Reply"), Dkt. Entry No. 83. For the reasons set forth below, Defendant's motion is denied.

**BACKGROUND**

Familiarity with the facts and procedural history of this case is presumed and only those facts relevant to the disposition of the motion are repeated herein. On April 11, 2007, Defendant pled guilty in the United States District Court for the Southern District of Ohio to producing false identification documents in violation of 18 U.S.C. §§ 1028(a)(1), (b)(1)(A) and, on July 7, 2007, was sentenced to 12 months' imprisonment.[1] *See,* Opp. at 2. Three years later, on June 30, 2010, Defendant pled guilty in the United States District Court for the District of New Jersey to making

---

[1] Defendant used the name Michael J. Sternquist at the time of the prior convictions, but, as Defendant identifies as female, now utilizes the legal name Kara Sternquist. *See,* Opp. at 3, n.1.

and selling computerized templates for producing fake identification documents in violation of 18 U.S.C. §§ 1028(a)(5), (b)(3)(c) and, on October 8, 2010, was sentenced to 27 months' imprisonment followed by three years of supervised release. *Id.*

On June 19, 2021, Defendant was arrested in New York County for criminal mischief in the second degree, a violation of N.Y. Penal Law § 145.10. *Id.* at 3. While the state charges were pending, U.S. Customs and Border Protection officers intercepted multiple international mail parcels at John F. Kennedy International Airport addressed to Defendant. *Id.* These packages, shipped from various locations in China, contained fraudulent badges purporting to belong to various government agencies, including, *inter alia*, the U.S. Marshal's Service, and the U.S. Department of State. *Id.* On September 14, 2022, federal agents executed a search warrant at Defendant's home where they found dozens of additional counterfeit badges, fake passports, counterfeit seals, military identification cards, and stolen credit cards. *Id.* During the execution of the warrant, agents recovered 23 firearm-related pieces of equipment, including 15 suppressors (silencers) and 8 items that qualified as "firearms" for purposes of section 922(g)'s prohibition, one of which qualified as a "machine gun" as defined by 18 U.S.C. § 921(a)(24). *Id.*

On October 17, 2022, a grand jury of this district returned an indictment charging Defendant with Government Seals Wrongfully Procured in violation of 18 U.S.C. § 1017 ("Count One"), Unauthorized Possession of Badges, Identification Cards and Other Insignia in violation of 18 U.S.C. § 701 ("Count Two"); and being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count Three"). *See*, Indictment, Dkt. Entry No. 40, at 1-2.

## LEGAL STANDARD

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S.

Const. amend II. As the Supreme Court has held, the Second Amendment "confer[s] an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *See also, McDonald v. City of Chicago*, 561 U.S. 742, 767-68, 778 (2010). In *Heller*, the Supreme Court upheld this right, finding unconstitutional a law that "ban[ned] handgun possession in the home." 554 U.S. at 595, 598-99, 635. Thereafter, in *McDonald*, the Supreme Court reaffirmed *Heller* and extended the individual Second Amendment right to the states through the Fourteenth Amendment, invalidating a set of municipal statutes that had banned handguns in homes. 561 U.S. at 767-68, 778.

However, at all times, the Supreme Court repeatedly has made clear that the Second Amendment right is "not unlimited." *Heller*, 554 U.S. at 595; *McDonald*, 561 U.S. at 786 (noting that "[i]t is important to keep in mind that *Heller,* while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose'") (quoting *Heller*, 554 U.S. at 626). Indeed, as the Supreme Court explained in *Heller*, and reconfirmed in *McDonald*, "nothing in [its] opinion should be taken to cast doubt on" well established "presumptively lawful regulatory measures," including "*longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27, n.26 (emphasis added); *McDonald*, 561 U.S. at 786 ("repeat[ing] those assurances").

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court reconfirmed that *Heller* and *McDonald* "recognized that the Second and Fourteenth Amendments protect the right of an *ordinary, law-abiding citizen* to possess a handgun in the home for self-defense." 142 S. Ct.

2111, 2122 (2022) (emphasis added). It then went on to hold that, "*consistent* with *Heller* and *McDonald*, [ ] the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home" as well. *Id.* at 2122 (emphasis added). Accordingly, *Bruen* found unconstitutional a New York state licensing regime that required individuals to demonstrate "a special need for self-defense" to obtain a public carry license. *Id.* As the *Bruen* Court explained, the regime violated the individual right "to carry a handgun for self-defense outside the home" protected under the Second Amendment. *Id.*

In so holding, the *Bruen* Court clarified that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30. In this way, *Bruen* put an end to a "'two-step' framework for analyzing Second Amendment challenges" that the Courts of Appeals had instituted in the years following *Heller* and *McDonald*, which had "combine[d] history with means-end scrutiny." *Id.* at 2125; *United States v. Hampton*, 2023 WL 3934546, at *10, n.15 (S.D.N.Y. June 9, 2023) (explaining that, under the old "two-step" framework, courts first would "'determine whether the challenged legislation impinges upon conduct protected by the Second Amendment,' and, if so, 'the appropriate level of scrutiny to apply and evaluate the constitutionality of the law using that level of scrutiny'") (quoting *United States v. Jimenez*, 895 F.3d 228, 232 (2d Cir. 2018)).

As the *Bruen* Court explained, "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Bruen*, 142 S. Ct. at 2127. Thus, "[i]n keeping with *Heller*," *Bruen* "essentially remove[d] the second step[,] the means-ends balancing[,] from the inquiry," instead focusing the inquiry on "textual and historical analysis alone." *Hampton*, 2023

WL 3934546, at *10, n.15 (citing *Bruen*, 142 S. Ct. at 2127 ("Despite the popularity of this two-step approach, it is one step too many.")); *Bruen*, 142 S. Ct. at 2126 (explaining that the approach set forth in *Bruen* is consistent with *Heller* and *McDonald*).

## <u>DISCUSSION</u>

In light of the Supreme Court's recent *Bruen* decision, Defendant moves to dismiss the § 922(g)(1) charge in the Indictment on grounds that it is an unconstitutional restriction on the Second Amendment right to keep and bear arms, both facially and as applied to Defendant, an individual with a history of nonviolent felony convictions.

Defendant contends that § 922(g)(1) cannot survive scrutiny under the new constitutionality test set forth in *Bruen* on three grounds: (1) the Second Amendment "presumptively protects" Defendant's conduct because, even convicted felons like her, are members of "the people" that the Second Amendment's "plain text" covers; (2) the Government must show that § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation," but cannot do so here because there is no historical tradition banning people with non-violent felony convictions from owning guns; and (3) Supreme Court dicta finding "longstanding prohibitions" on felon firearm possession to be "presumptively lawful" does not "obviate the need for all lower courts . . . to engage in the independent analysis *Bruen* demands" and "pre-*Bruen* decisions treating [the Supreme Court's] 'presumptively lawful' list as dispositive are no longer good law." Mot. at 2-3, 7-13, 21-23.

The Government opposes maintaining that Defendant's constitutional challenge fails because: (1) *Bruen* did not overrule, but rather confirmed, Supreme Court dicta stating that felon firearm dispossession regulations were "presumptively lawful" and, thus, binding Second Circuit precedent that relied on said dicta in finding § 922(g)(1) constitutional remains good law; (2) under

*Bruen*'s textual inquiry, Defendant and other convicted felons are not included in "the people" afforded Second Amendment protection because they are not "law-abiding citizens;" and (3) even if Defendant is a member of "the people" that the Second Amendment protects, § 922(g)(1) survives *Bruen*'s historical inquiry because the statute's prohibition of felon firearm possession is "consistent with the Nation's historical tradition of firearm regulation," which includes regulation aimed at disarming groups who are perceived as dangerous or who have demonstrated disregard for the law. Opp. at 5-14.

For the reasons set forth below, this Court finds § 922(g)(1) constitutional, both on its face and as applied to Defendant, on the ground that *Bruen* did not disturb and, if anything, endorsed prior Supreme Court dicta assuring the validity of "longstanding prohibitions" of felon firearm possession, and, as such, the Second Circuit's incorporation of that dicta into binding Second Circuit precedent upholding the constitutionality of § 922(g)(1) remains in effect. Accordingly, Defendant's motion is denied.

## I.  Precedent

Justice Thomas, writing for the majority in *Bruen*, set the stage for the issue to be decided and the breadth of its holding in the opinion's opening paragraph, making it abundantly clear that *Bruen's* holding was *consistent* with *Heller* and *McDonald,* all three of which concerned the rights of "ordinary, law-abiding citizens."

> In *District of Columbia v. Heller* . . . and *McDonald v. Chicago* . . . , we recognized that the Second and Fourteenth Amendments protect the right of an *ordinary, law-abiding citizen* to possess a handgun in the home for self-defense. *In this case*, *petitioners and respondents agree* that *ordinary, law-abiding citizens* have a similar right to carry handguns publicly for their self-defense. *We too agree*, and now hold, *consistent* with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Bruen*, 142 S. Ct. at 2122, 2134 (emphasis added).  Most importantly, Justice Thomas did not state that either *Heller* or *McDonald* or both were being abrogated by *Bruen* in any way.  Indeed, throughout the opinion, the *Bruen* majority repeatedly referred to the petitioners before it as two "ordinary" and "law-abiding" citizens with "ordinary self-defense needs" and repeatedly characterized its Second Amendment jurisprudence as providing "law-abiding" citizens with the right to possess handguns.  *Id.* at 2122, 2125, 2131, 2133-34, 2138, 2150, 2156.

Relevantly and notably, the concurring opinions in *Bruen* clarify the majority opinion's limits.  Justice Kavanaugh, in his concurring opinion, joined by Chief Justice Roberts, both of whose votes were necessary to *Bruen*'s majority, expressly emphasized that "the Second Amendment allows a 'variety' of gun regulations" as set forth in *Heller* and that "[n]othing in [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."  *Id.* at 2162 (Kavanaugh, J., concurring) (citing *Heller*, 554 U.S. at 626-27, n.26).

Similarly, Justice Alito, in his concurring opinion, explained that *Bruen* does not "distur[b] anything . . . said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns" and "reiterat[ing]" that "[a]ll that [*Bruen*] decide[s] in *this* case is that the Second Amendment protects the right of *law-abiding people* to carry a gun outside the home for self-defense and that the [New York law at issue in *Bruen*]... is unconstitutional."  *Id.* at 2157-59 (Alito, J., concurring) (emphasis added).

Had the *Bruen* Court intended to abrogate or overturn *Heller* and/or *McDonald*, it would have done so explicitly.  However, it did not do so.  The Court oft has stated that "this Court does not overturn its precedents lightly" and "this Court has always held that 'any departure' from the doctrine 'demands special justification.'" *Michigan v. Bay Mills Indian Community,* 572 U.S. 782,

798 (2014) (quoting *Arizona v. Ramsey*, 467 U.S. 203, 212 (1984)); *See also, Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio.*").

Thus, while Defendant would have this Court believe that *Bruen* "deem[ed] one of *Heller*'s 'presumptively lawful' measures to be unconstitutional" and abrogated any prior case law that might have relied on *Heller*'s list of "presumptively lawful" firearm regulations, that view finds no support in *Bruen.* The regulation at issue in *Bruen* required "law-abiding citizens" with "ordinary self-defense needs" to show "proper cause" in order to obtain a license to carry a handgun publicly in New York. *See, Bruen*, 142 S. Ct. at 2150. Restrictions on public carry, such as the one at issue in *Bruen*, were not included among *Heller*'s list of presumptively lawful regulations. *See, Heller*, 554 U.S. at 626-27, n.26 (listing as presumptively lawful "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms"). Defendant's view of *Bruen*'s impact is overly broad, misses the mark, and misstates the plain meaning and intent of the *Bruen* holding.

Of particular note, contrary to Defendant's assertions, courts across the country denying post-*Bruen* challenges to § 922(g)(1) have observed that "the *Bruen* majority opinion makes abundantly clear that *Heller* and *McDonald* stand as controlling precedents" and that *Bruen* itself is "consistent" with those precedents. *See, United States v. King*, 634 F. Supp.3d 76, 83 (S.D.N.Y. 2022) (citing *Bruen*, 142 S. Ct. at 2134); *United States v. Davila,* 2023 WL 5361799, at *2 (S.D.N.Y. Aug. 22, 2023); *Hampton*, 2023 WL 3934546, at *10, n.14, 11 (explaining that "*Bruen* reaffirms the holdings of *Heller* and *McDonald*," collecting excerpts from *Bruen* that exemplify this reaffirmation, and noting that courts "around the country" have concluded the same). More

specifically, and of particular significance here, courts interpreting § 922(g)(1) in *Bruen*'s wake have observed that, "the Supreme Court's decisions in *Heller*, *McDonald*, and *Bruen* have left the *felon disarmament laws* undisturbed." *United States v. Barnes*, 2023 WL 2268129, at *1 (S.D.N.Y. Feb. 28, 2023) (emphasis added); *Accord, Davila,* 2023 WL 5361799, at *2 (". . . as three members of the *Bruen* majority separately emphasized, the Supreme Court's holding did not 'disturb [ ] anything that [it] said in *Heller* or *McDonald*." (citing *Bruen* at 2157 (Alito, J. concurring))); *United States v. Garlick*, 2023 WL 2575664, at *4 (S.D.N.Y. Mar. 30, 2023) ("There is nothing in *Bruen* that suggests the Court saw that explication of the reach of the Second Amendment as disturbing the Supreme Court's dicta that 'longstanding prohibitions on the possession of firearms by felons' remain constitutional."); *Hampton*, 2023 WL 3934546, at *11 ("Throughout its modern Second Amendment jurisprudence, the Supreme Court has consistently limited its recognition of Second Amendment rights to '*law-abiding* citizens' and has noted its approval for felon-in-possession laws."); *King*, 634 F. Supp.3d at 83 (S.D.N.Y. 2022) ("The Supreme Court unequivocally validated the felon disarmament laws in *McDonald*[] and *Heller*[], twice reassuring that its decisions interpreting the Second Amendment should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]'") (quoting *Heller*, 554 U.S. at 635).

While it "may be true" that this Supreme Court authority constitutes dicta, "that debate is of little consequence" because, in 2013, the Second Circuit "turned what [Defendant] characterizes as 'dicta' in *Heller* and *McDonald* into binding precedent" when, in *United States v. Bogle,* 717 F.3d 281, 281-82 (2d Cir. 2013) (*per curiam*), the Circuit upheld the constitutionality of § 922(g)(1) under those two decisions. *Hampton*, 2023 WL 3934546, at *12 (analyzing *Bogle* in rejecting similar argument in the face of a post-*Bruen* challenge to § 922(g)(1)); *Accord, Davila*,

2023 WL 5361799, at *2 (upholding the constitutionality of § 922(g)(1) under *Bogle*'s "binding" precedent).

Significantly, as the Government notes here, *Bogle* did not apply the "means-end interest balancing" analysis rejected by *Bruen* in affirming § 922(g)(1)'s constitutionality. *See,* Opp. at 9; *Hampton*, 2023 WL 3934546, at *12; *United States v. Harrison*, 2023 WL 4670957, at *8 (N.D.N.Y. July 20, 2023)(concurring with *Hampton*). Instead, "the Second Circuit reasoned purely from language in *Heller* and *McDonald* expressly affirming 'longstanding prohibitions on the possession of firearms by felons.'" *Hampton*, 2023 WL 3934546, at *12 (citing *Bogle*, 717 F.3d at 281 (internal quotation marks omitted)); *Harrison*, 2023 WL 4670957, at *7 (noting that, in *Bogle*, "a unanimous panel of the Second Circuit relied on the 'assurances' from *Heller* and *McDonald* to 'join every other circuit to consider the issue in affirming that § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons'") (citing *Bogle*, 717 F.3d at 281-82).

Accordingly, this Court finds that § 922(g)(1) is constitutional on its face and does not violate the Second Amendment under established Second Circuit precedent. Defendant's challenge to the statute as applied "also has no merit [as she] has [multiple] felony convictions, . . . which are crimes punishable by imprisonment for a term exceeding one year [that] fall squarely within [§] 922(g)(1)." *King*, 2022 WL 5240928, at *5 (internal citations and quotation marks omitted). As such, "[§] 922(g)(1) is not unlawful as applied to [her]" either. *Id.*; *Harrison*, 2023 WL 4670957, at *8 (denying defendant's motion to dismiss indictment and finding § 922(g)(1) constitutional as applied to defendant with prior "federal drug conviction").

Thus, for the reasons set forth above, this Court joins the other district courts in this Circuit that have considered post-*Bruen* challenges to § 922(g)(1)'s constitutionality in light of *Bogle* in

finding that "nothing in *Bruen* [ ] alters the rationale of *Bogle*" and, "[w]ith *Heller* and *McDonald* still in full force after *Bruen*, *Bogle* remains binding precedent within this Circuit on the constitutionality of [§] 922(g)[(1)]." *Garlick*, 2023 WL 2575664, at *5 and *Hampton*, 2023 WL 3934546, at *1, 12 (respectively); *See also, Harrison*, 2023 WL 4670957, at *8 (finding that the district court cases in this Circuit "persuasively demonstrate that *Bogle* remains binding precedent in this Circuit on the constitutional question of felon disarmament under § 922(g)(1)"); *King*, 634 F. Supp.3d at 83 (referencing *Bogle*'s precedential effect in denying defendant's motion to dismiss the indictment charging a § 922(g)(1) violation); *Barnes*, 2023 WL 2268129, at *2 (same); *Davila*, 2023 WL 5361799, at *2 (same).

In finding § 922(g)(1) constitutional under Second Circuit precedent, this Court joins the courts in this Circuit that have ended their analysis of § 922(g)(1)'s constitutionality based on *Bogle*'s binding effect and it need not engage in *Bruen*'s textual and historical inquiries. *See, e.g., Garlick*, 2023 WL 2575664, at *5; *Barnes*, 2023 WL 2268129, at *2; *King*, 634 F. Supp.3d at 83.

## II.  *Range*

This Court concludes by briefly addressing Defendant's request that this Court "reach the same conclusion here" that the Third Circuit did in *Range v. Attorney General*, a recent decision in which the Third Circuit, sitting *en banc*, sustained a post-*Bruen* constitutional challenge to § 922(g)(1) as applied to an individual with a prior nonviolent felony.  69 F.4th 96, 106 (3d Cir. 2023); Reply at 3-14.  Defendant contends that "*Range* persuasively applies *Bruen* to a situation similar to [her own]" and asks this Court to undertake an individualized assessment of her background and criminal history to determine the extent to which she poses a danger to the public. Reply at 3, 5, 9.

Defendant spills much ink in urging this Court to follow *Range*, a decision that: (1) is not

binding in this Circuit; (2) is an outlier amongst courts across the country analyzing post-*Bruen* constitutional challenges to § 922(g)(1); and (3) most importantly, was limited in precedential value by the *Range* Court itself to the specific and unusual facts of that case, which, contrary to Defendant's contention, bear absolutely no similarity to the facts before this Court. *Id.* at 1; *See*, *Range*, 69 F.4th at 106 ("Our decision today is a narrow one."). For these reasons, as well as the foregoing analysis, this Court declines Defendant's invitation to follow *Range*.

*Range* does not support Defendant's contentions that she is similarly situated to the defendant in *Range* because that individual had a very different criminal background and a most peculiar situation in that his offense of conviction actually was classified under Pennsylvania law as a misdemeanor with a possible maximum five-year prison sentence. "Unlike the food stamp fraudster [in *Range*] who [pled] guilty to an unusual state law *misdemeanor*, [Defendant's] prior misconduct [here] involves…actual federal felon[ies]:" identity theft and identity fraud. *See, Harrison*, 2023 WL 4670957, at *8 (distinguishing the defendant in *Range* from a defendant with an "an actual federal felony," particularly a "federal drug conviction") (emphasis added); Mot. at 1; Opp. at 1-3.

Moreover, as noted above, the Third Circuit's *en banc* decision in *Range* goes against the weight of the authority analyzing § 922(g)(1)'s constitutionality in *Bruen*'s wake. As another district court in this Circuit observed in a recent, post-*Range* decision upholding the constitutionality of § 922(g)(1), "the list of post-*Bruen* precedent that is actually favorable to defendant's Second Amendment text-and-history argument basically begins and ends with the *en banc* opinion in *Range*." *Harrison*, 2023 WL 4670957, at *8. While the Second Circuit has not spoken on the issue yet, "multiple [other] circuits [already have] considered and rejected" *Bruen* challenges to § 922(g)(1) and "[s]o too have about 140 district courts." *Id.* at *6. Most notably, in

*United States v. Jackson*, the Eighth Circuit declined the defendant's invitation to consider his personal history to determine the statute's validity as applied to him and, instead, upheld § 922(g)(1), both facially and as applied to nonviolent felons, citing the assurances of *Heller, McDonald*, and *Bruen* as well as "the history that supports them." 69 F.4th 495, 501-02, 504-06 (8th Cir. 2023). This Court concurs with the Eight Circuit's analysis.

Defendant attempts to minimize the precedential value of *Jackson* contending it "relied on the now-defunct reasoning of the panel opinion in *Range*, overturned by the *en banc* court" several days after the Eighth Circuit decided *Jackson*. However, this argument fails for two reasons. First, *Jackson* engaged in its own survey of our Nation's historical tradition of firearm regulation and, in doing so, it considered the *Range* panel's historical inquiry as well as its own, finding that § 922(g)(1) passes muster under either inquiry. *Id.* at 503-506. Second, and most fatally to Defendant's attack on *Jackson's* precedential value, after the *en banc* decision in *Range* was issued, the Eighth Circuit affirmed its decision in *Jackson* in upholding § 922(g)(1)'s constitutionality in the face of yet another *Bruen* challenge involving an individual with prior, nonviolent felony convictions. *See, United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023).

Furthermore, the Fifth Circuit, while not directly speaking on the issue or undertaking its own historical analysis, has rejected several post-*Bruen* challenges to § 922(g)(1)'s constitutionality, albeit on plain error review, both before and after *Range*. *See, e.g., United States v. Garza*, 2023 WL 4044442, at *1 (5th Cir. June 15, 2023) (finding no plain error on appeal of § 922(g)(1) conviction because "there is no binding precedent explicitly holding that § 922(g)(1) is unconstitutional on its face or as applied and because it is not clear that either *Bruen* or *Rahimi* dictate such a result" either); *United States v. Johnson*, 2023 WL 3431238, at *1-2 (5th Cir. May

12, 2023) (finding no plain error on appeal of § 922(g)(1) conviction because "there is no binding precedent explicitly holding that § 922(g)(1) is unconstitutional and because it is not clear that Bruen dictates such a result" either); *United States v. Pickett*, 2023 WL 3193281, at *1 (5th Cir. May 2, 2023) (same).

On the district court level, the landscape is similar. As noted above, district courts "both in this Circuit and around the country" have continued to "uphold [§] 922(g)(1) in the wake of *Bruen*." *See, e.g., Hampton*, 2023 WL 3934546, at *10, n.14 (collecting examples); *Harrison*, 2023 WL 4670957, at *6 (stating that "multiple [other] circuits have already considered and rejected" *Bruen* challenges to § 922(g)(1)'s constitutionality and "[s]o too have about 140 district courts."). Within this Circuit alone, district courts have held § 922(g)(1) constitutional in response to both facial and as applied challenges raised in *Bruen*'s wake, both before and after *Range*. Notably, some courts in this Circuit have held the statute constitutional under *Bogle*, while others have held it constitutional under *Bruen*'s historical analysis. *See, e.g., Davila*, 2023 WL 5361799, at *1-5 (rejecting *Range* and denying motion to dismiss indictment, finding § 922(g)(1) constitutional in light of *Bogle* and under *Bruen*'s historical inquiry); *Harrison*, 2023 WL 4670957, at *8 (same as applied to defendant with prior "federal drug conviction"); *Hampton*, 2023 WL 3934546, at *10-13, n.14 (rejecting *Range* and denying motion to acquit after finding § 922(g)(1) constitutional in light of *Bogle*); *Garlick*, 2023 WL 2575664, at *4-5 (denying motion to dismiss indictment, finding § 922(g)(1) constitutional on its face and as applied to defendant in light of *Bogle*); *Barnes*, 2023 WL 2268129, at *1-2 (same); *King*, 634 F. Supp.3d at 82-83 (same as to facial challenge); *United States v. Martin*, 2023 WL 1767161, at *2-3 (D. VT. Feb 3. 2023) (denying motion to dismiss indictment after finding § 922(g)(1) passes muster under *Bruen*'s historical inquiry); *Campiti v. Garland*, 2023 WL 143173, at *3-5 (D. CT. Jan. 1, 2023) (finding

§ 922(g)(1) consistent with "the Nation's historical tradition of firearm regulation").

Defendant urges that "[t]his Court simply cannot ignore *Bruen* or the numerous circuit and district court cases recognizing that it dramatically changed the Second Amendment analysis." Reply at 2, n.1 (collecting cases). Ironically, however, Defendant ignores the overwhelming body of case law set forth above that has found § 922(g)(1)'s constitutionality undisturbed and even is supported by *Bruen* itself and the historical inquiry that it demands. Moreover, the "numerous circuit and district court cases" that Defendant cites to consist of *eight* nonbinding decisions from outside the Second Circuit, only *two* of which concern § 922(g)(1). *Id.*

One such decision concerning § 922(g)(1) is *Atkinson v. Garland*, a Seventh Circuit decision that remanded a § 922(g)(1) challenge for reconsideration by the district court, finding that both the government and defendant lacked sufficient detail in their historical analyses for it to reach a conclusion. 70 F.4th 1018, 1020-24 (7th Cir. 2023). Notably, however, the *Atkinson* Court stated that it had "no doubt" that the "historical details" the government did provide "may prove relevant on remand" and went as far as to state that, "on remand, [the government] may also develop its contention that the plain text of the Second Amendment does not protect felons and other offenders impacted by § 922(g)(1)." *Id.* at 1022, 1024.

The other decision concerning § 922(g)(1) is *United States v. Bullock*, a district court decision from the Southern District of Mississippi that appears to be an outlier amongst many other district courts in the Fifth Circuit that have found § 922(g)(1) constitutional after *Bruen*. 2023 WL 4232309 (S.D. MS. June 28, 2023); *See, e.g., United States v. Robinson,* 2023 WL 4304762, at *2 (N.D. TX. June 29, 2023) (finding § 922(g)(1) "consistent with the Nation's historical tradition of firearm regulation" and noting that "despite numerous challenges to section 922(g)(1) in the wake of *Bruen*, the Court is aware of only two decisions" finding the statute unconstitutional: *Range* and

*Bullock*).

In sum, the Court finds unpersuasive and rejects Defendant's arguments that it should follow *Range*, an outlier decision, that not only is inconsistent with *Bruen* for the reasons set forth in Section I above, but also is not binding precedent for courts in this Circuit.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss the Indictment is denied.


SO ORDERED.

Dated: Brooklyn, New York
September 15, 2023 (*nunc pro tunc* to
September 12, 2023)


_____
/s/
DORA L. IRIZARRY
United States District Judge