**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza -16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1204 Fax: (718) 855-0760

Tamara Giwa
*Executive Director and
Attorney-in-Chief*

*Eastern District of New York*
Michelle A. Gelernt
*Interim Attorney-in-Charge*

April 26, 2024

Brian H. Woo
United States Probation Officer
Brooklyn, New York 11201

Re: *United States v. Kara Sternquist*, 22-cr-473

Dear Officer Woo:

I am respectfully submitting the below response to the government's letter dated April 11, 2024 related to Ms. Sternquist's presentence report.

<u>Response to government's request related to Paragraph 18</u>: This information is not relevant to Ms. Sternquist's offense conduct and should not be included.

<u>Response to government's request related to Paragraph 19</u>: Items 16 and 17 do not meet the definition of firearms as they are not completed frames or receivers.

- Item 16 is a lightweight piece of plastic sold by a company called Polymer80. These Polymer80 frames were sold on the regular, open internet until August 2022. *See* Polymer80, Full Size Frame and Jigs, https://polymer80.com/pistols/frameandjig/fsframeandjig/ (explaining that the items are no longer sold due to a local DC court ruling in August 2022).

- Item 17 is not a completed receiver. It is a "partially completed receiver" and a "jig." Gov. Ltr, Ex. 1, Sternquist 6459.

The statutory definition of a gun includes "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such

1

weapon." 18 U.S.C. § 921(a)(3). Items 16 and 17 do not meet the plain language of this definition as they are not completed frames or receivers, but incomplete ones.

In August 2022, however, the ATF issued a new rule, defining "frame" and "receiver" as including "[p]artially complete, disassembled, or nonfunctional frame[s] or receiver[s]." 27 C.F.R. § 478.12 (c). Litigation about whether this new rule was lawfully promulgated started immediately and the Fifth Circuit held that "Congress has neither authorized the expansion of firearm regulation nor permitted the criminalization of previously lawful conduct." *VanDerStok v. Garland*, 86 F.4th 179, 182 (5th Cir. 2023). The Circuit explained that the new rule "clearly conflicts with the plain language of the" statute by "redefin[ing] 'frame or receiver' to include partially complete, disassembled, or nonfunctional frames or receivers," and therefore "constitutes unlawful agency action." *Id.* at 190. This matter will be decided by the United States Supreme Court, which granted a petition for certiorari for *VanDerStok* this week. Dkt. No. 23-852 (granted April 22, 2024).

This Court should not rely on a new rule, already invalidated by one circuit court, to enhance Ms. Sternquist's guidelines. Moreover, it is likely that Ms. Sternquist acquired these parts when they were indisputably legal, before the ATF issued the new rule.

Response to government's request related to Paragraph 22: The government's request should be denied. As explained in Ms. Sternquist's objections to the PSR, three of the guns the government now asserts were "effectively operable," were in fact inoperable without manipulation by the members of the ATF. *See* PSR Objections, at 12-13. That these three items could not have been used by Ms. Sternquist is relevant. This, along with the absence of any ammunition, strongly supports that Ms. Sternquist had no intent to commit any crime using these guns. In any event, the amount of time it took a skilled ATF agent to replace missing parts is irrelevant, both because Ms. Sternquist is not a skilled ATF agent, and because the time to replace the part does not include the time the agent took to diagnose the problem. For example, in relation to exhibit 20, highlighted by the government in its letter, the agent first disassembled the gun, then figured out that there was a bent part, and, after that, found an appropriate replacement part. PSR Objections, Ex. H.

2

That – after all these steps – it took that agent "approximately three minutes" to insert that new part is not relevant to Ms. Sternquist or the PSR.

Response to government's request related to Paragraph 69: The government asks that the PSR include that Ms. Sternquist has had "incidents of contraband possession." Gov. Ltr. at 2. This request should be denied. Ms. Sternquist has no access to "contraband" and has had no contraband. She has no access to anything except what is provided by medical or correctional staff, which includes soda cans and oxycodone and morphine, medications that she is provided daily to address her pain. On one occasion, she placed her medication in a container while taking a shower. Subsequent to the staff and court telling her this was prohibited, she did not do it again. Moreover, there is no indication that Ms. Sternquist had anything to do with surgical scissors being left at her bedside; any surgical scissors would necessarily have been placed there by the medical staff.

The PSR should not include these requests. However, if the government's request that more information be provided about Ms. Sternquist's confinement at Windsor Park Nursing Home is accepted then this paragraph should also reflect that Ms. Sternquist is shackled at all times on both of her ankles, including when she is attempting to do her physical therapy and while sleeping. She spends the vast majority of her day shackled to the bed. She does not move around the facility. Currently, those shackles have caused an abrasion on one ankle and a cut on top of her other foot. Medical staff have bandaged both wounds.

                                                Respectfully submitted,

                                                /s/
Allegra Glashausser
Assistant Federal Defender
Federal Defenders of New York
(212) 417-8739